IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                                             :   Chapter 11
In re:                                                       :
                                                             :   Case No. 17-10561 (LSS)
SUNGEVITY, INC., et at.,                                     :
                                                             :   Joint Administration Pending
            Debtors.¹                                        :
                                                             :   Hearing Date: March 15, 2017 at 1:30 pm (ET)
                                                             :   Re: Docket No. 13
                                                             :
                                                             :
-------------------------------------------------------------x
```

**OBJECTION OF MMA ENERGY CAPITAL, LLC TO DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
DEBTORS TO (A) OBTAIN POSTPETITION FINANCING ON SUPERPRIORITY
SENIOR SECURED BASIS AND (B) USE OF CASH COLLATERAL, (II)
GRANTING (A) LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, AND (B) ADEQUATE PROTECTION TO CERTAIN
PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL,
(IV) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (V)
MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING**

MMA Energy Capital, LLC ("**MMA**") hereby objects to the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on Superpriority Senior Secured Basis and (B) Use of Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Claims, and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Lenders, (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing* (the "**DIP Motion**") (Docket No. 13),² and respectfully represents as follows:

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598). The principal place of business for each of the Debtors is 66 Franklin Street, Suite 310, Oakland, CA 94607.

[2] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to such terms in the DIP Motion.

**Preliminary Statement**

1.      By the DIP Motion, the Debtors seek approval of in excess of $10 million of postpetition financing from a new lender that would prime MMA's prepetition liens. MMA, however, has not consented to be primed, and the Debtors cannot meet their independent burden of demonstrating, in accordance with the law in this circuit, that MMA's liens are adequately protected pursuant to section 364(d)(1) of the Bankruptcy Code.

2.      MMA does not object to the Debtors' use of cash collateral in these cases, subject to the Debtors providing MMA with the same adequate protection in exchange as they are providing to the Senior Prepetition Lender. MMA supports a sale of the Debtors' assets, but is concerned that the Debtors have made little effort to develop a pared down budget that balances the Debtors' need to preserve their businesses for an orderly and thorough auction process, but does not pile on priming debt or unnecessarily use cash collateral. Because the DIP Lender is also the stalking horse bidder in the proposed 363 sale and has the right to credit bid its DIP loan, the DIP Lender has little incentive to police the budget. Therefore, unless the DIP Lender agrees not to prime the existing prepetition liens during the interim period, it is incumbent upon the Debtors to reduce the DIP Budget to the minimum amount necessary during the pendency of the interim period so that the Debtors can continue to operate solely on the basis of cash collateral before any final hearing on the proposed postpetition financing.

**Background**

A.    **Prepetition First Lien Indebtedness**

3.      Prior to the Petition Date, on March 31, 2015, Sungevity, Inc. and Sungevity Development, LLC entered into the Senior Prepetition Credit Agreement with the Senior Prepetition Lender. As of the Petition Date, the principal outstanding indebtedness under the Senior Prepetition Credit Agreement was $55,000,000. The obligations under the Senior

Prepetition Credit Agreement are guaranteed by the Prepetition Subsidiary Guarantors and secured by, *inter alia*, the Senior Prepetition Collateral.

### B. Prepetition Second Lien Indebtedness

4. On September 20, 2016, Sungevity, Inc. and Sungevity Development, LLC entered into the MMA LSA with MMA. As of the Petition Date, the principal outstanding indebtedness under the MMA LSA was $10,000,000. The obligations under the MMA LSA are guaranteed by the Prepetition Subsidiary Guarantors and secured by, *inter alia*, second liens on the Senior Prepetition Collateral.

5. On November 10, 2016, Sungevity, Inc. and Sungevity Development, LLC entered into the MHA LSA with MHA. As of the Petition Date, the principal outstanding indebtedness under the MHA LSA was $5,000,000. The obligations under the MHA LSA are guaranteed by the Prepetition Subsidiary Guarantors and secured by, *inter alia*, second liens on the Senior Prepetition Collateral.

6. On January 30, 2017, Sungevity, Inc. and Sungevity Development, LLC entered into the Bridge Loan Credit Agreement with the Bridge Lenders. As of the Petition Date, the principal outstanding indebtedness under the Bridge Loan Credit Agreement was $9,500,000. The obligations under the Bridge Loan Credit Agreement are secured by, *inter alia*, second liens on the Senior Prepetition Collateral that are *pari passu* with the liens under the MHA LSA and the MMA LSA. MMA is a lender under the Bridge Loan Credit Agreement with respect to its funded commitment of $1,500,000 under the agreement.

### C. Intercreditor Agreement

7. The specific rights and priorities of the secured parties are addressed by the Prepetition Intercreditor Agreement, dated January 30, 2017, by and among, the Senior Prepetition Lender, MMA, MHA, and the Bridge Agent on behalf of the Bridge Lenders.

8. Although the Debtors state that MMA's rights are limited under the Prepetition Intercreditor Agreement, the Prepetition Intercreditor Agreement only purports to limit MMA's right to object to DIP financing "to be provided in good faith by [Hercules Capital, Inc., in its capacity as agent and lender party to the Senior Prepetition Credit Agreement]."[3] Moreover, the same section also provides, as a condition to limiting MMA's right to object and limiting MMA's right to seek adequate protection, that the proposed DIP financing cannot exceed $10 million.  Accordingly, MMA's rights with respect to the DIP Motion are in no way limited by the Prepetition Intercreditor Agreement.

## Objection

### A. The Debtors are Unable to Satisfy their Burden of Establishing that the Priming Lien Satisfies Section 364(d) of the Bankruptcy Code

9. Section 364(d)(1) of the Bankruptcy Code provides that the court, after notice and a hearing, may authorize postpetition financing secured by a senior or equal lien on property of the estate that is subject to a lien only if–

> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1); *In re LTAP US, LLLP*, 2011 Bankr. LEXIS 667, *8-9 (Bankr. D. Del. Feb. 18, 2011) ("Priming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected.").

10. Although the term "adequate protection" is not defined by the Bankruptcy Code, section 361(e) of the Bankruptcy Code provides three examples as to how adequate protection may be provided: (i) cash payments to the extent any grant of a postpetition lien

---

[3] Section 2.14(a) of the Prepetition Intercreditor Agreement.

results in a decrease in the value of a prepetition secured creditor's collateral; (ii) replacement liens to the extent any grant of a postpetition lien results in a decrease in the value of a prepetition secured creditor's collateral; or (iii) other relief resulting in the prepetition secured lender realizing the "indubitable equivalent" of its interest in the collateral.  11 U.S.C. § 361; *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994).

11. The purpose of adequate protection, as evident from its legislative history, is to prevent a bankruptcy filing from depriving prepetition secured creditors from "the benefit of their bargain" with a debtor.  *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (citing H.R. Rep. No. 95-595, at 339 (1978)); *see Swedeland Dev. Grp.*, 16 F.3d at 564; *In re Phoenix Steel Corp.*, 39 B.R. 218, 224 (Bankr. D. Del. 1984).  As such, any proposed DIP financing "should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." *Swedeland Dev. Grp.*, 16 F.3d at 564.

12. The burden of proof on the issue of adequate protection under section 364(d) rests squarely with the debtor.  11 U.S.C. § 364(d)(2); *Swedeland Dev. Grp.*, 16 F.3d at 564 (citations omitted).  Whether protection is adequate "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the postpetition financing.  *Id*. (quoting *In re AmerPrepetition Intercreditor Agreementn Mariner Industries, Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).  The existence of adequate protection should be premised on facts or projections with a firm evidentiary basis.  *Mosello*, 195 B.R. at 299;  *see Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713 (Bankr. D. Del. 1996); *In re First South Sav. Asso.*, 820 F.2d 700, 712 (5th Cir. 1987).

13. The Debtors acknowledge that MMA has not consented to the priming of its liens.[4] Notwithstanding, the Debtors argue that MMA is not entitled to adequate protection because, in absence of the proposed DIP financing, the Debtors would be forced into a liquidation that would result in MMA receiving no recovery.[5] Significantly, the Debtors provide no details as to how the liquidation value was determined. The conclusory statements by the Debtors fall short of the requirement that adequate protection must be established with a firm evidentiary basis. *See Mosello*, 195 B.R. at 299. At minimum, a priming lien should not be granted in connection with the interim order because it entails complicated issues as to valuation that can be resolved prior to a final hearing on postpeititon financing. This is particularly true where, as here, the DIP Facility is to be provided by the Stalking Horse Purchaser in connection with a hurried sale process under section 363 of the Bankruptcy Code.

14. More importantly, the Third Circuit has expressly rejected the argument that adequate protection exists if the creditor would be worse off without the priming lien. *Swedeland Dev. Grp.,* 16 F.3d at 566. That simply is not the standard in this jurisdiction.

15. In the alternative, the Debtors argue that, even if the proposed DIP financing results in the diminution of value in MMA's collateral, the requirement for adequate protection is satisfied because MMA is to receive additional junior liens on "unencumbered assets (including proceeds from Avoidance Actions, intellectual property and other Excluded Assets) and a superpriority claim that will help to protect against any possible diminution."[6] The Debtors, however, have not demonstrated that such additional junior liens have any meaningful

---

[4] Motion at 25.

[5] Motion at 30.

[6] *Id.*

or quantifiable value. As the term is defined in the Motion, it is not even clear what comprises the "Excluded Assets." Moreover, the superpriority claim under section 507(b) of the Bankruptcy Code amounts to a statutory entitlement for secured creditors that by itself is an inadequate and hollow protection.

16. As such, the Debtors are wholly incapable of satisfying its burden of proof that there is adequate protection in order to justify the extraordinary relief of a priming lien.

### B.     Other Objections

17. MMA also objects to the inclusion of the Subordinated Lenders' collateral in the proposed Carve-Out. Doing so effectively surcharges MMA and the other Subordinated Lenders without their consent for the costs of running a process that even the Debtors state is not for their benefit. As such, the proposed surcharge violates section 506(c) of the Bankruptcy Code.

18. Although MMA does not object to the Debtors' use of cash collateral, MMA and the other Subordinated Lenders should receive the same adequate protection, albeit on a junior basis, as the adequate protection that the Senior Prepetition Lender is receiving.[7] Currently, the proposed Interim Order provides that, among the Prepetition Secured Parties, only the Senior Prepetition Lender is receiving replacement liens on the DIP Collateral.

### Reservation of Rights

19. As of the date hereof, MMA is continuing to review the DIP Motion and the terms and conditions of the DIP Facility. As such, MMA submits this Objection pursuant to a full reservation of rights, including, but not limited to, the right to supplement and amend this Objection, to raise any issue properly before the Court at the interim hearing and any subsequent

---

[7] *See* Section 2.04(c) of the Prepetition Intercreditor Agreement.

hearing relating to the DIP Motion, and to introduce evidence at any hearing on any grounds that may be appropriate.

WHEREFORE, MMA respectfully requests that this Court deny approval of the DIP Motion and grant such other relief as the Court may deem just and appropriate.

| | |
|---|---|
| Dated: March 15, 2017<br>Wilmington, Delaware | /s/ *Paul N. Heath*<br>Paul N. Heath (DE No. 3704)<br>Zachary I. Shapiro (DE No. 5103)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 651-7700<br>Facsimile:  (302) 651-7701<br>Email: heath@rlf.com<br>         shapiro@rlf.com<br><br>-and-<br><br>Debra A. Dandeneau<br>Jacob M. Kaplan<br>Baker & McKenzie LLP<br>452 Fifth Avenue<br>New York, New York  10018<br>Telephone:  (212) 626-4100<br>Facsimile:  (212) 310-1600<br>Email: debra.dandeneau@bakermckenzie.com<br>         jacob.kaplan@bakermckenzie.com<br><br>*Attorneys for MMA Energy Capital, LLC* |