IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| SUNGEVITY, INC., *et al.*,[1] | ) Case No. 17-10561 (KG) |
| Debtors. | ) Jointly Administered |
| | ) RE: Docket No. 15 |

**ORDER (I) ESTABLISHING BIDDING PROCEDURES AND
GRANTING RELATED RELIEF AND (II) APPROVING THE BID
PROTECTIONS RELATED TO THE SALE OF CERTAIN ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Bidding Procedures Order"): (a) approving the proposed bidding procedures attached as **Schedule 1** to this Bidding Procedures Order (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer for the sale of all or substantially all of their assets (the "Sale"); (b) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (c) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreement described herein and attached hereto; (d) approving the Debtors' selection of LSHC Solar Holdings, LLC ("LSHC") and Hercules Capital, Inc. ("Hercules") as the stalking horse bidders (the "Stalking Horse Bidders"), the Bid Protections (as

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598). The principal place of business for each of the Debtors is 66 Franklin Street, Suite 310, Oakland, CA 94607.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

01:21734984.1

defined below) for the Stalking Horse Bidders, and that certain asset purchase agreement (as may be amended from time to time, the "Stalking Horse Purchase Agreement"), attached as Exhibit D to the Motion, among the Debtors and the Stalking Horse Bidders; (e) scheduling a final hearing (the "Sale Hearing") to approve the Sale; and (f) granting related relief, and upon the Debtors' further request that, at the Sale Hearing, this Court enter an order (a "Sale Order"), a proposed form of which will be filed by April 11, 2017, (x) authorizing the sale of all or substantially all of the Debtors' assets free and clear of liens, claims, interests, and encumbrances (collectively, the "Interests") with any such Interests to attach to the proceeds thereof with the same validity, extent and priority (under the Bankruptcy Code) as such Interests had immediately prior to the consummation of the Sale; (y) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (z) granting related relief, all as more fully described in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

A.  The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

B.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  The statutory bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

D.  Notice of the Motion, the Bidding Procedures Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Notice of the Motion has been given to: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (b) all entities known to have asserted any Interest in or upon any of the Debtors' assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by

this Motion; (d) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; (e) the Office of the United States Trustee; (f) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis, excluding insiders); (g) MMA Energy Capital, LLC; (h) MHA Trust LLC; (i) Atalaya Special Opportunities Fund VI LP; (j) Wilmington Savings Fund Society, FSB; (k) Wilmington Trust, National Association; (l) the Securities & Exchange Commission; (m) the Office of the United States Attorney General for the District of Delaware; (n) the Internal Revenue Service; (o) the U.S. Department of Justice; (p) the offices of the attorneys general for the states in which the Debtors operate; (q) counsel to LSHC; and (r) all parties entitled to notice pursuant to Local Rule 2002-1(B) (collectively, the "Notice Parties"). Notice of the Motion also has been given to all other known (a) creditors of the Debtors and (b) registered holders of equity securities in the Debtors. Accordingly, no further notice of the Motion or this Bidding Procedures Order is necessary or required.

E.    The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (a) approval of the Bidding Procedures; (b) approval of the selection of LSHC and Hercules as the Stalking Horse Bidders; (c) approval of the Assumption and Assignment Procedures; (d) approval of the form and manner of notice of all procedures, protections, schedules, and agreement described in the Motion and attached thereto; (e) the scheduling of a date for the Sale Hearing; and (f) all related relief as set forth herein. Such compelling and sound business justification, which was set forth in the Motion and on the record at the hearing for such Motion, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

01:21734984.1

4

F. Entry into the Stalking Horse Purchase Agreement with the Stalking Horse Bidders is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.[3] The Stalking Horse Purchase Agreement provides the Debtors with the opportunity to sell all or substantially all of their assets in order to preserve and realize their optimal value.

G. The Bidding Procedures, in the form attached hereto as **Schedule 1** and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates. The Bid Protections: (a) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code in accordance with the Stalking Horse Purchase Agreement; (b) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidders; (c) are reasonable and appropriate, including in light of the size and nature of the Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidders, notwithstanding that the Sale is subject to higher or better offers; and (d) were necessary for the Stalking Horse Bidders to pursue the Sale and to be bound by the Stalking Horse Purchase Agreement.

H. The Bidding Procedures and the Bid Protections were a material inducement to, and express condition of, the willingness of the Stalking Horse Bidders to submit bids through

---

[3] To the extent there are any conflicts between any specific terms of this Bidding Procedures Order and any specific terms of the Stalking Horse Purchase Agreement, the terms of this Bidding Procedures Order shall govern.

01:21734984.1

execution of the Stalking Horse Purchase Agreement that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.

I. The Bidding Procedures and the Stalking Horse Purchase Agreement were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidders.

J. The Motion and the Assumption and Assignment Notice are reasonably calculated to provide counterparties to the Debtors' Designated Contracts with proper notice of the intended assumption and assignment of their executory contracts or unexpired leases, any cure amounts relating thereto, and the Assumption and Assignment Procedures.

K. The sale notice [D.I. 49] (the "Sale Notice"), which is incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the assets, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the assets to be sold; (e) instructions for promptly obtaining copies of the Stalking Horse Purchase Agreement; (f) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Sale Order and Stalking Horse Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (g) notice of the proposed assumption and assignment of Designated Contracts to the Stalking Horse Bidders pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder(s) arising from the Auction, if any), and no other or further notice of the Sale shall be required. As evidenced by the affidavits of service

01:21734984.1

previously filed with this Court [D.I. 70, 116], the Debtors served the Sale Notice on March 16, 2017, or March 24, 2017 upon (i) the Notice Parties; (ii) all known creditors of the Debtors, including their contract counterparties, and (iii) all registered holders of equity securities in the Debtors. In addition, as evidenced by the affidavit of service previously filed with this Court [D.I. 88], the Debtors published the Sale Notice on March 21, 2017 in *The Financial Times*.

L.   The Post-Auction Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s), and no other or further notice is required.

M.   The Debtors' marketing process has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS HEREBY ORDERED THAT:**

1.   The Motion is granted as provided herein.[4]

2.   All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.   Timeline for the Sale**

3.   The Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order. The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

---

[4] Notwithstanding anything to the contrary herein, the consummation of the Sale is subject to entry of the Sale Order.

01:21734984.1

| Action | Deadline |
|---|---|
| Bid Deadline | **5:00 p.m. (prevailing Eastern Time) on April 10, 2017** as the deadline by which bids for the assets (as well as all other documentation required under the Bidding Procedures for Potential Bidders (as defined in the Bidding Procedures)) must be actually received (the "Bid Deadline") |
| Sale Objection Deadline | **4:00 p.m. (prevailing Eastern Time) on April 11, 2017** |
| Auction | **10:00 a.m. (prevailing Eastern Time) on April 12, 2017,** if needed, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or at any other time and location as the Debtors may hereafter designate on proper notice) |
| Contract Objection Deadline | **4:00 p.m. (prevailing Eastern Time) on April 13, 2017** |
| Auction Objection Deadline and Adequate Assurance Objection Deadline | **At or prior to the Sale Hearing (April 17, 2017 at 3:00 p.m.)** |
| Sale Hearing | **3:00 p.m. (prevailing Eastern Time) on April 17, 2017** |
| Supplemental Contract Objection Deadline | Fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment |

4. For the avoidance of doubt, the Debtors reserve the right, and are authorized to, modify the above timeline and the Bidding Procedures, in consultation with the Stalking Horse Bidders and the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee"), in accordance with the provisions of the Bidding Procedures, subject to the terms of the Stalking Horse Purchase Agreement.

## II. The Bidding Procedures

5. The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**, are approved in their entirety. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith and the

01:21734984.1

Stalking Horse Purchase Agreement. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

6. The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate, and designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest. As further described in the Bidding Procedures, the Bid Deadline shall be 5:00 p.m. (prevailing Eastern Time) on April 10, 2017. Any disputes or objections to the selection of Qualified Bids, Successful Bids, or Backup Bids (all as defined in the Bidding Procedures) shall be resolved by this Court at the Sale Hearing as set forth herein.

7. The Stalking Horse Bidders are deemed Qualified Bidders, and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.

8. The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures. The Auction, to the extent that an Auction is necessary under the Bidding Procedures, shall take place at 10:00 a.m. (prevailing Eastern Time) on April 12, 2017 at the offices of the proposed co-counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801 (or at any other location as the Debtors may hereafter designate on proper notice). The Auction will be conducted openly and all creditors will be permitted to attend.

9. Any creditor with a valid and perfected lien on any assets of the Debtors' estates (each, a "Secured Creditor") shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of such Secured Creditor's allowed secured claims to the extent that such secured claims are valid and undisputed pursuant to

Bankruptcy Code section 363(k) or other applicable law, and any such credit bid shall be deemed a Qualified Bid, and any such Secured Creditor a Qualified Bidder, for all purposes hereof; *provided*, that any credit bid by the Stalking Horse Bidders with respect to (a) secured debt held by Hercules shall not exceed $30 million, and shall be limited to the amount of such debt that is actually contributed by Hercules to LSHC on or before the commencement of the Auction, and (b) secured debtor-in-possession financing provided by LSHC shall be limited to the amount of such debt actually received by the Debtors, less any amounts that are required to be returned to LSHC upon closing.

10. Further, in the event of a competing Qualified Bid, the Stalking Horse Bidders will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include the full amount of the Bid Protections in lieu of cash and for purposes of evaluating the overbid equal to cash in the same amount, subject to the limitations set forth in paragraph 9. Notwithstanding the preceding sentence, the inclusion in any overbid of the Bid Protections shall not be deemed to create a secured claim or constitute an offset against any such claim under section 363(k) of the Bankruptcy Code.

### III. Stalking Horse Bidders, Bid Protections, and Stalking Horse Purchase Agreement

11. The Debtors are authorized to enter into the Stalking Horse Purchase Agreement, subject to higher or otherwise better offers at the Auction. The Bid Protections contained in the Stalking Horse Purchase Agreement are approved, and shall survive termination of the Stalking Horse Purchase Agreement; *provided*, that the Breakup Fee will be equal to $500,000; and the Expense Reimbursement will be payable on account of documented and reasonable out-of-pocket expenses up to $500,000; *provided, further, that the amount of Excluded Cash (as defined in the Stalking Horse Purchase Agreement) shall be equal to $2,000,000* The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidders on account of the Stalking Horse Bidders' Bid Protections as modified herein upon the Debtors' consummation of the Sale with a purchaser other than the

01:21734984.1

10

Stalking Horse Bidders. If triggered, the Bid Protections shall be allowed administrative expenses under Bankruptcy Code sections 503(b) and 507(a)(2), in accordance with the terms of the Stalking Horse Purchase Agreement.

## IV. Notice Procedures

12. The Sale Notice is approved.

### A. *Notice of Sale, Auction, and Sale Hearing.*

13. Within one business day after the entry of this Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Bidding Procedures Order and Bidding Procedures by first-class mail or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon: (a) all entities known to have expressed an interest in a transaction with respect to some or all of the Debtors' assets during the past six (6) months; (b) all entities known to have asserted any Interest in or upon any of the Debtors' assets; (c) counsel to the Committee; (d) the Office of the United States Trustee; (e) MMA Energy Capital, LLC; (f) MHA Trust LLC; (g) Atalaya Special Opportunities Fund VI LP; (h) Wilmington Savings Fund Society, FSB; (i) Wilmington Trust, National Association; (j) the Securities & Exchange Commission; (k) the Office of the United States Attorney General for the District of Delaware; (l) the Internal Revenue Service; (m) the U.S. Department of Justice; (n) the offices of the attorneys general for the states in which the Debtors operate; (o) counsel to LSHC; and (p) all parties entitled to notice pursuant to Local Rule 2002-1(B).

14. Service of the Sale Notice as described above in Paragraph K shall be sufficient and proper notice of the Sale with respect to known interested parties. Publication of the Sale Notice as described above in Paragraph K shall be sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

01:21734984.1

B.  *Notice of Successful Bidder(s).*

15. As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file on the docket, but not serve, a notice identifying the Successful Bidder(s), substantially in the form attached hereto as **Schedule 3** (the "Post-Auction Notice").

## V.  Assumption and Assignment Procedures

16. The Assumption and Assignment Procedures, which are set forth below, regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidders (or other Successful Bidder, following the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code and in accordance with the Stalking Horse Purchase Agreement are hereby approved to the extent set forth herein.

A.  *Notice of Assumption and Assignment.*

17. Within one business day following entry of this Order (any such date, the "Assumption and Assignment Service Date"), the Debtors shall file with the Court, and post on the following website, www.kccllc.net/Sungevity, (the "Case Website"), the Notice of Assumption and Assignment and, included therewith, a list (the "Designated Contracts List") that specifies: (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (the "Designated Contracts"), including the name of each non-Debtor counterparty to such Designated Contract (the "Designated Contract Counterparty"); and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under the Designated Contract (the "Cure Costs"). The Debtors shall serve, via first class mail, the Notice of Assumption and Assignment, in substantially the forms attached hereto as **Schedule 2**, on all Designated Contract Counterparties. The Debtors shall serve on all parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail, a modified version of

01:21734984.1

the Notice of Assumption and Assignment, without the Designated Contracts List, which will include instructions regarding how to view the Designated Contracts List on the Case Website. Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

18. A Designated Contract Counterparty listed on the Notice of Assumption and Assignment may file an objection (a "Contract Objection") to the proposed assumption and assignment of the applicable Designated Contract, the proposed Cure Costs, if any, and the ability of the Stalking Horse Bidders to provide adequate assurance of future performance. All Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the following parties no later than 4:00 p.m. (prevailing Eastern Time) on April 13, 2017 (the "Contract Objection Deadline"): (i) proposed co-counsel for the Debtors, Morrison & Foerster LLP, 250 West 55 Street, New York, New York 10019, Attn: Jonathan I. Levine (jonlevine@mofo.com) and Jennifer L. Marines (jmarines@mofo.com) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary (mbcleary@ycst.com) and Jaime Luton Chapman (jchapman@ycst.com); (ii) the Debtors, c/o Sungevity, Inc., 66 Franklin Street Suite 310, Oakland, CA 94607, Attn: Elizabeth Rushforth (elizabeth.rushforth@sungevity.com); (iii) counsel to LSHC, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Ross Kwasteniet (ross.kwasteniet@kirkland.com) and Brad Weiland (brad.weiland@kirkland.com); (iv) counsel to Hercules, Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601, Attn: Stuart Komrower (skomrower@coleschotz.com); (v) the Office of the United States

01:21734984.1

Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Linda Casey (linda.casey@usdoj.gov); and (vi) proposed counsel to the official committee of unsecured creditors, Brown Rudnick LLP, One Financial Center, Boston, MA 02111, Attn: Steven Pohl (spohl@brownrudnick.com) and Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Jeffrey R. Waxman, Esq. (jwaxman@morrisjames.com) (collectively, the "Objection Recipients"). Objections to the ability of a Successful Bidder(s) other than the Stalking Horse Bidders to provide adequate assurance of future performance (an "Adequate Assurance Objection") shall be raised at or prior to the Sale Hearing (the "Adequate Assurance Deadline").

19. If a Designated Contract Counterparty files a Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court.

B.  *Supplemental Notice of Assumption and Assignment.*

20. The Stalking Horse Bidders may modify the Designated Contracts List until the opening of business on the date of the Auction. Following the conclusion of the Auction, if any, and the selection of the Successful Bidder(s), the Debtors reserve the right, but only in accordance with the Stalking Horse Purchase Agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s), at any time after the Assumption and Assignment Service Date, before or after the closing of the Sale, to: (a) supplement the Designated Contracts List on the Notice of Assumption and Assignment with previously omitted Designated Contracts; (b) remove a Designated Contract from the Designated Contracts List; and/or (c) modify the previously-stated Cure Costs associated with any Designated Contract.

01:21734984.1

21. In the event that the Stalking Horse Bidders or Debtors exercise any of the rights reserved above to supplement the Designated Contracts List or modify previously-stated Cure Costs, the Debtors will promptly serve a supplemental notice of assumption and assignment by, first class mail, on the Designated Contract Counterparty, and its attorney, if known, to each impacted Designated Contract at the last known address available to the Debtors (a "Supplemental Notice of Assumption and Assignment"). Each Supplemental Notice of Assumption and Assignment will include the same information with respect to listed Designated Contracts as was included in the Notice of Assumption and Assignment.

22. Any Designated Contract Counterparty listed on a Supplemental Notice of Assumption and Assignment may file an objection with respect to the impacted Designated Contract (a "Supplemental Contract Objection") to (a) Cure Costs, if any, and (b) if such Designated Contract was not previously included on any Notice (or Supplemental Notice) of Assumption and Assignment, (i) the proposed assumption and assignment of the applicable Designated Contract and (ii) the ability of a Successful Bidder(s), including the Stalking Horse Bidders, to provide adequate assurance of future performance. All Supplemental Contract Objections must: (a) be in writing; (b) state with specificity the basis for the objection as well as any Cure Costs that the objector asserts to be due (in all cases with appropriate documentation in support thereof); (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed and served on the Contract Notice Parties no later than fourteen (14) days from the date of service of such Supplemental Notice of Assumption and Assignment, which date will be set forth in the Supplemental Notice of Assumption and Assignment (the "Supplemental Contract Objection Deadline").

23. If a Designated Contract Counterparty files a Supplemental Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek an expedited hearing before the Court (a "Supplemental Designated Contract Hearing") to determine the Cure Costs, if any, and approve the assumption of the relevant Designated Contracts. If there is no such objection (or such objection has been resolved), then the Debtors may submit an order (a "Supplemental Designated Contract Order") to this Court, including by filing a certification of counsel, fixing the Cure Costs and approving the assumption of any Designated Contract listed on a Supplemental Notice of Assumption and Assignment.

C. *Additional Notice of Assumption and Assignment Procedures.*

24. If the Designated Contract Counterparty does not file and serve a Contract Objection or Supplemental Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court in connection with such objection establishing alternative Cure Costs, (a) the Cure Costs, if any, set forth in the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) shall be controlling, notwithstanding anything to the contrary in any Designated Contract or any other document, and (b) the Designated Contract Counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract and the Cure Costs, if any, and will be forever barred from asserting any claim related to such Designated Contract for any default occurring or continuing prior to the Contract Objection Deadline against the Debtors or the Successful Bidder(s), or the property of any of them.

25. The inclusion of a Designated Contract on the Notice of Assumption and Assignment (or Supplemental Notice of Assumption and Assignment) will not: (a) obligate the Debtors to assume any Designated Contract listed thereon or the Successful Bidder(s) to take

01:21734984.1

16

assignment of such Designated Contract; or (b) constitute any admission or agreement of the Debtors that such Designated Contract is an executory contract. Only those Designated Contracts that are included on a schedule of assumed and acquired contracts attached to the final asset purchase agreement with the Successful Bidder(s) (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the Successful Bidder(s).

### VI.     Sale Hearing.

26.     A Sale Hearing to (a) approve the sale of certain of the assets to the Successful Bidder(s) and (b) authorize the assumption and assignment of certain executory contracts and unexpired leases shall be held at 3:00 p.m. (prevailing Eastern Time) on April 17, 2017, and may be adjourned or rescheduled without further notice other than by announcement in open court on the date scheduled for the Sale Hearing or by the filing of a notice on the Court's docket, which shall be posted on the Case Website. At the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the Backup Bid. The Sale Hearing shall be an evidentiary hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder(s) cannot or refuses to consummate the Sale, the Debtors may, in accordance with the Bidding Procedures and in consultation with the Committee, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder(s), and the Debtors shall be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court.

27.     Any and all objections, if any, to the Sale to the Stalking Horse Bidders and entry of the Sale Order (a "<u>Sale Objection</u>") must be filed and served on the Objection Recipients by 4:00 p.m. (prevailing Eastern Time) on April 11, 2017 (the "<u>Sale Objection Deadline</u>"). Any

01:21734984.1

and all objections to the conduct of the Auction and the terms of a Sale to a Successful Bidder(s) other than the Stalking Horse Bidders (an "Auction Objection") must be raised at or prior to the Sale Hearing (the "Auction Objection Deadline"). Any party failing to timely file a Sale Objection or raise an Auction Objection, as applicable, will be forever barred from objecting and will be deemed to have consented to the Sale, including the transfer of the Debtors' right, title and interest in, to, and under the assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the definitive agreement for the Sale.

## VII. Miscellaneous.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

29. This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

30. To the extent any of the deadlines set forth in this Bidding Procedures Order do not comply with the Local Rules, such Local Rules are waived and the terms of this Bidding Procedures Order shall govern.

31. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

32. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Bidding Procedures, any Stalking Horse Purchase Agreement, and the implementation of this Bidding Procedures Order.

Dated: March 29, 2017
Wilmington, Delaware

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE