## Schedule 1

### Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGEVITY, INC., *et al.*,[1] | ) | Case No. 17-10561 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **RE: Docket No. 15** |

## BIDDING PROCEDURES FOR
## THE SALE OF THE DEBTORS' ASSETS

On March [●], 2017, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Establishing Bidding Procedures and Granting Related Relief and (II) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Assets"), in accordance with and as described in that certain agreement (the "Stalking Horse Purchase Agreement"), dated as of March 13, 2017, by and among the Debtors, and LSHC Solar Holdings, LLC ("LSHC") and Hercules Capital, Inc. ("Hercules" and, together with LSHC, the "Stalking Horse Bidders").

1.      **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each the following persons unless otherwise provided (collectively, the "Notice Parties"):

   a.      **Debtors**.  Sungevity, Inc., 66 Franklin Street, Suite 310, Oakland, California 94607, Attn: Elizabeth Rushforth.

   b.      **Debtors' Co-Counsel**.  Morrison & Foerster LLP, 250 West 55th Street, New York, New York, Attn: Jonathan I. Levine (jonlevine@mofo.com) and Jennifer L. Marines (jmarines@mofo.com); and Young Conaway Stargatt & Taylor, LLP, 100 North King Street, Wilmington, Delaware 19801, Attn: M. Blake Cleary (mbcleary@ycst.com) and Jaime Luton Chapman (jchapman@ycst.com).

---

[1]  The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598).  The principal place of business for each of the Debtors is 66 Franklin Street, Suite 310, Oakland, CA 94607.

[2]  All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

    c.      **Debtors' Investment Banker**.  Ducera Securities LLC, 499 Park Avenue, New York, New York 10022, Attn: Joshua Scherer (jscherer@ducerapartners.com).

    d.      **Committee's Counsel**.  Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Sunni P. Beville, Esq. (sbeville@brownrudnick.com) and Steven D. Pohl, Esq. (spohl@brownrudnick.com).

    e.      **LSHC's Counsel**.  Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Ross Kwasteniet (ross.kwasteniet@kirkland.com) and Brad Weiland (brad.weiland@kirkland.com).

    f.      **Hercules Capital, Inc.'s Counsel**.  Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601, Attn: Stuart Komrower (skomrower@coleschotz.com).

2.     **Potential Bidders**.

       The Debtors and their financial advisors have identified, and may in the future identify, parties they believe potentially may be interested in consummating (and potentially may have the financial resources necessary to consummate) a competing transaction.  To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (each, a "<u>Potential Bidder</u>") must deliver or have previously delivered, if determined to be necessary by the Debtors, in consultation with the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "<u>Committee</u>"):

    a.      an executed confidentiality agreement on terms acceptable to the Debtors (a "<u>Confidentiality Agreement</u>"), to the extent not already executed; and

    b.      the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (i) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, and (ii) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale).

3.     **Qualified Bidders**.

    a.      A "<u>Qualified Bidder</u>" is a Potential Bidder:  (i) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale, as determined in the Debtors' sole discretion; and (ii) whose Bid (as defined below) is a Qualified Bid (as defined below).  On the date of the Bid Deadline, by no later than 11:59 p.m., the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder, and shall provide a copy of each Qualified Bid to the Stalking Horse Bidders.  Both of the Stalking Horse Bidders shall be deemed a Qualified Bidder at all times.

b.    For the avoidance of doubt, two or more Potential Bidders may submit a Bid for any or all of the Assets, provided that such Bid(s), when taken as a whole (collectively, a "Joint Bid"), is determined by the Debtors, in consultation with the Committee and in accordance with Section 3(a) of these Bidding Procedures, to constitute a Qualified Bid.

c.    If any Potential Bidder is determined by the Debtors, in consultation with the Committee, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined below) and all accumulated interest thereon on or within three business days after the Bid Deadline.

d.    Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Stalking Horse Purchase Agreement, without the written consent of the Debtors (in consultation with the Committee), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

e.    Any disputes related to these Bidding Procedures, including whether a Bid (including a Joint Bid) constitutes a Qualified Bid, shall be resolved by the Court.

## 4.    Due Diligence.

a.    **Diligence Provided to Potential Bidders.**

Only Potential Bidders that have entered into a Confidentiality Agreement shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Debtors will provide to each Potential Bidder that has entered into a Confidentiality Agreement reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders other than the Stalking Horse Bidders, the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors shall not furnish any confidential information relating to the Assets, the Debtors' liabilities, or the Sale ("Confidential Sale Information") to any person, *except* to a Potential Bidder that has entered into a confidentiality Agreement or to such Potential Bidder's duly-authorized representatives, in each case, to the extent provided in the applicable Confidentiality Agreement; *provided, however*, that nothing herein shall limit the Debtors' ability to furnish Confidential Sale Information to the professional advisors of the Committee on

a professionals' eyes only basis; *provided, further, however,* that upon agreement with the Debtors, the Committee's professionals may share certain Confidential Sale Information with the members of the Committee that have signed a confidentiality agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, in consultation with the Committee, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine, in consultation with the Committee, are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not approved by the Debtors as a Potential Bidder.

**All due diligence requests must be directed to Ducera Partners LLC, 499 Park Avenue, New York, New York 10022, Attn: Joshua Scherer.**

b.      **Diligence Provided by Potential Bidders**.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such Potential Bidder is not a Qualified Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable Confidentiality Agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such bidder and the Debtors; (b) to the applicable bidder; (c) to the professional advisors of the Committee, and (d) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

5.      **Bid Requirements**.

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (collectively, the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment, in consultation with the

Committee, shall constitute a "Qualified Bid." For the avoidance of doubt, the Stalking Horse Purchase Agreement will be deemed a Qualified Bid for all purposes.

a.   **Assets**. Each Bid must provide for the purchase of all or substantially all of the Assets, and must clearly state which assets the Qualified Bidder is agreeing to purchase, and which liabilities of the Debtors the Qualified Bidder is agreeing to assume ("Assumed Liabilities").

b.   **Purchase Price**. Each Bid must clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components (the "Purchase Price").

c.   **Minimum Bid**. The aggregate consideration proposed by each Bid must equal or exceed the sum of (i) the purchase price set forth in the Stalking Horse Purchase Agreement, (ii) the Breakup Fee (as defined below), and (iii) the Expense Reimbursement (as defined below) (a "Minimum Bid").[3]

d.   **Deposit**. With its Bid, each Potential Bidder must submit by wire transfer of immediately available funds, a cash deposit in the amount equal to **10 percent** of the aggregate cash and non-cash Purchase Price set forth in the Bid,[4] to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

e.   **Assumption of Obligations**. Each Bid must expressly assume all of the Assumed Obligations (as defined in the Stalking Horse Purchase Agreement) on terms no less favorable to the Debtors than the Stalking Horse Purchase Agreement, as determined in the Debtors' business judgment, in consultation with the Committee.

---

[3] The table below illustrates a potential range for the Minimum Bid based on different drawn amounts under the DIP financing facility. Expense reimbursement is assumed to be $500,000, the maximum amount that can be reimbursed pursuant to the Stalking Horse Purchase Agreement. The calculation for purchase price excludes "the Purchaser's assumption of the Assumed Obligations," a component of the Purchase Price detailed in the Stalking Horse Purchase Agreement, as the amount is yet to be determined.

*$ in millions*

| Illustrative Minimum Bid | | |
|---|---|---|
| | **Low** | **High** |
| Senior Secured Obligations | $30.0 | $30.0 |
| DIP Obligations | 10.0 | 20.0 |
| Excluded Cash | 2.0 | 2.0 |
| **Purchase Price** | $42.0 | $52.0 |
| Breakup Fee | $0.5 | $0.5 |
| Expense Reimbursement | $0.5 | $0.5 |
| **Minimum Bid** | $43.0 | $53.0 |

[4] The amount of the Deposit should include the implied value of any securities to be provided as consideration under the Bid, but will exclude the value of assumed liabilities.

f.      **Same or Better Terms**.   Each Bid must be on terms that are not more burdensome than the terms of the Stalking Horse Purchase Agreement, as determined by the Debtors, in consultation with the Committee.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the Sale and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the Stalking Horse Purchase Agreement clearly marked to show all changes requested by the Potential Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "Qualified Bid Documents").

g.      **Contingencies; No Financing or Diligence Outs**.   A Bid shall not be conditioned on (i) obtaining financing, (ii) shareholder, board of directors, or other internal approval, or (iii) the outcome or completion of a due diligence review by the Potential Bidder. Notwithstanding the foregoing, a Bid may be subject to (i) the accuracy at the closing of the Sale of specified representations and warranties, (ii) or the satisfaction at the closing of the Sale of specified conditions, which shall not be more burdensome, as determined in the Debtors' business judgment, in consultation with the Committee, than those set forth in the Stalking Horse Purchase Agreement.

h.      **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Potential Bidder if such Potential Bidder is an entity formed for the purpose of consummating the Sale), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific persons and counsel whom the Debtors and their advisors should contact regarding such Bid.

i.      **Demonstrated Financial Capacity**.   A Qualified Bidder must have, in the Debtors' business judgment, in consultation with the Committee, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

j.      **Committed Financing**.  To the extent that a Bid is not accompanied by evidence of the Potential Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing documented to the satisfaction of the Debtors, in consultation with the Committee, which demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

k.   **Binding and Irrevocable**.  A Qualified Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Qualified Bidder is not selected as the Backup Bidder (as defined herein).

l.   **Expenses; Disclaimer of Fees**.  Each Bid (other than the Stalking Horse Purchase Agreement) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Potential Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

m.   **Authorization**.  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

n.   **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to submitting the Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid.

o.   **Adherence to Bid Procedures**.  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

p.   **Regulatory Approvals and Covenants**.  A Bid must set forth each regulatory and third-party approval to consummate the Sale and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

q.   **Consent to Jurisdiction**.  Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing of the Sale, as applicable.

r.     **Bid Deadline**.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before 5:00 p.m. (prevailing Eastern Time) on April 10, 2017 (the "Bid Deadline") by the Notice Parties.

The Debtors, in consultation with the Committee, reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Committee, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtors' assets that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid.  The Debtors, in consultation with the Committee, may also permit otherwise Qualified Bidders who submitted Bids by the Bid Deadline for a material portion of the Debtors' assets but are who are not identified as a component of a single Qualified Bid consisting of multiple Bids, to participate in the Auction and to submit higher and/or otherwise better Bids that in subsequent rounds of bidding may be considered, together with other Bids for non-overlapping portions of the Debtors' assets, as part of such a single Qualified Bid.

6.     **Right to Credit Bid**.

At the Auction, subject to section 363(k) of the Bankruptcy Code, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code, unless otherwise ordered by the Court for cause; *provided*, that a Secured Creditor shall have the right to credit bid all or a portion of the value of its secured claim only to the extent such secured claim is not disputed; *provided, further*, that any credit bid by the Stalking Horse Bidders with respect to (a) secured debt held by Hercules shall ~~not exceed~~ $30 million, and shall be limited to the amount ~~of such debt that is actually contributed by Hercules to LSHC on or before the commencement of the Auction,~~ and (b) secured debtor-in-possession financing provided by LSHC shall be limited to the amount of such debt actually received by the Debtors, less any amounts that are required to be returned to LSHC upon closing.  In the event of a competing Qualified Bid, the Stalking Horse Bidders will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids to include the full amount of the Bid Protections in lieu of cash and for purposes of evaluating the overbid equal to cash in the same amount.  Notwithstanding the preceding sentence, the inclusion in any overbid of the Bid Protections shall not be deemed to create a secured claim or constitute an offset against any such claim under section 363(k) of the Bankruptcy Code.

*[handwritten margin note, left: "may be entitled to be credit bid up to the amount of"]*

*[handwritten margin note, right: "50% of outstanding under the DIP facility"]*

Credit bids, if any, by Secured Creditors will not impair or otherwise affect the Stalking Horse Bidders' entitlement to the Bid Protections granted under the Bidding Procedures Order.

7.     **Auction**.

If the Debtors receive a Qualified Bid, other than the Stalking Horse Purchase Agreement, the Debtors will conduct an Auction to determine the Successful Bidder(s).  If the Debtors do not receive a Qualified Bid (other than the Stalking Horse Purchase Agreement), the Debtors will not conduct an Auction and shall designate the Stalking Horse Bidders' Bid as the Successful Bid.

On the date of the Bid Deadline, by no later than 11:59 p.m. (prevailing Eastern Time), the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the Baseline Bid to each Qualified Bidder. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors reasonably deem, in consultation with the Committee, relevant to the value of the Qualified Bid to the Debtors' estates, which may include, among other things: (a) the number, type, and nature of any changes to the applicable Stalking Horse Purchase Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought to be acquired and obligations sought to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the applicable Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on April 12, 2017, at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, or such later date and time as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

a.     **The Debtors Shall Conduct the Auction**.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

The Auction will be conducted openly and all creditors will be permitted to attend. The Qualified Bidders and the Stalking Horse Bidders may appear at the Auction in person or through duly authorized representatives.

b.     **Terms of Overbids**.

"Overbid" means any bid made at the Auction by a Qualified Bidder[5] subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

(i)     **Minimum Overbid Increment**. The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the sum of $250,000.00 (a "Minimum Overbid Increment"). Upon the solicitation of each subsequent round of Overbids,

---

[5] Or Qualified Bidders, in the event of a Joint Bid.

the Debtors may, in their business judgment, in consultation with the Committee, reduce the amount of the applicable Minimum Overbid Increment.

Additional consideration in excess of the amount set forth in the respective Baseline Bid may include: (1) cash and/or noncash consideration; *provided* that the value for such noncash consideration shall be determined by the Debtors in their reasonable business judgment; and (2) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of such secured creditors' allowed secured claim, subject to section 363(k) of the Bankruptcy Code and any other restrictions set forth herein.

(ii)  **Conclusion of Each Overbid Round**.  Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii)  **Overbid Alterations**.  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Committee, but shall otherwise comply with the terms of these Bidding Procedures.

(iv)  **Announcing Highest Bid**.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Committee, have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Initial Minimum Overbid for such asset package, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for a given asset package (for each asset package, the "Prevailing Highest Bid").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid.

c.  **Consideration of Overbids**.

The Debtors reserve the right, in their reasonable business judgment, and in consultation with the Committee and the Stalking Horse Bidders, to adjourn the Auction one or more times to, among other things:  (i) facilitate discussions among the Debtors, the Committee, and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

d.     **Closing the Auction**.

(i)     The Auction shall continue until there is only one Bid or Joint Bid, as applicable, that the Debtors determine, in their reasonable business judgment and in consultation with the Committee, to be the highest or otherwise best Bid. Such Bid or Joint Bid, as applicable, shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder (or Qualified Bidders, in the event of a Joint Bid) the "<u>Successful Bidder(s)</u>," at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)    For the avoidance of doubt, but without limiting the Bid Protections or the provisions of any Stalking Horse Purchase Agreement, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

(iii)   The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid; *provided, however*, that the Debtors, in consultation with the Committee and subject to approval by the Court, may determine to accept such Bid if such Bid may otherwise be deemed the Successful Bid.

(iv)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Court.

e.     **No Collusion; Good-Faith Offer**.

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith offer and it intends to consummate the Sale if selected as the Successful Bidder(s).

8.     **Backup Bidder**.

a.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Committee (the "<u>Backup Bid</u>"), shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b.     The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The

Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable, until the closing of the Sale with the Successful Bidder(s). The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder(s) and shall thereafter be returned within five (5) business days.

c.    If a Successful Bidder(s) fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may, in consultation with the Committee, select the applicable Backup Bidder as the Successful Bidder(s), and such Backup Bidder shall be deemed a Successful Bidder(s) for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder(s)'s Deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder(s), including with respect to specific performance.

**9.    Reservation of Rights.**

Without prejudice to the rights of the Stalking Horse Bidders under the terms the Stalking Horse Purchase Agreement, the Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Committee, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

**10.    Sale Hearing.**

A hearing to consider approval of each Sale of the Assets to the Successful Bidder(s) (or to approve the Stalking Horse Purchase Agreement, as applicable, if no Auction is held) (the "Sale Hearing") is currently scheduled to take place on or before [3:00 p.m.] (prevailing Eastern Time) on [April 17], 2017, before the Honorable Kevin Gross, at the Court, 824 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Committee, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidders).**

At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

**11.    Bid Protections.**

To provide an incentive and to compensate the Stalking Horse Bidders for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Purchase Agreement with the knowledge and risk that arises from participating in the sale and

subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidders, under the conditions and in the amount set forth in the Bidding Procedures Order:

a.  a break-up fee in the amount of $500,000 (the "Breakup Fee"); and

b.  a reasonable expense reimbursement for documented and reasonable out-of-pocket expenses up to $500,000 (the "Expense Reimbursement Fee" and, together with the Breakup Fee, the "Bid Protections"), each payable pursuant to the terms of the Stalking Horse Purchase Agreement in the event that the Stalking Horse Purchase Agreement is terminated due to the Debtors entering into an agreement regarding an alternative transaction and consummating such alterative transaction.

The Bid Protections will be an allowed administrative expense priority claim in accordance with the terms of the Stalking Horse Purchase Agreement.

The Stalking Horse Bidders shall have standing to appear and be heard on all issues related to the Auction, the Sale, and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures).

**12.    Return of Deposit**.

The Deposit of the Successful Bidder(s) shall be applied to the Purchase Price of the transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder(s) and the Backup Bidder) on or within five business days after the Auction.

If the Successful Bidder(s) fails to consummate the Sale because of a breach by the Successful Bidder(s), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder(s), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the Sale with the Backup Bidder without the need for an additional hearing or order of the Court.

**13.    Fiduciary Out**.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; provided that in the event of any such action, all rights and remedies of the Stalking Horse Bidders in these Bidding Procedures or the Stalking Horse Purchase Agreement shall be preserved.