## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGEVITY, INC., *et al.*,[1] | ) | Case No. 17-10561 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: April 7, 2017 at 2:00 p.m.** |
| | | **UST Obj. Deadline: April 3, 2017 at 4:00 p.m.** |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING (D.I. 13)

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and

through his counsel, hereby files this Objection To Debtors' Motion For Interim And Final

Orders (I) Authorizing Postpetition Financing, (II) Granting Liens And Providing Superpriority

Administrative Expense Claims, (III) Authorizing Use Of Cash Collateral, (IV) Granting

Adequate Protection To Prepetition Lender, (V) Modifying The Automatic Stay, And (VI)

Scheduling A Final Hearing (D.I. 13; the "Motion").  In support of the Objection, the U.S.

Trustee states as follow:

### INTRODUCTION

1.    The U.S. Trustee objects to the entry of the final order approving the proposed

postpetition financing without a record establishing that the cases are administratively solvent.

2.    Furthermore, the U.S. Trustee objects to certain provisions of the proposed order

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598).  The principal place of business for each of the Debtors is 66 Franklin Street, Suite 310, Oakland, CA 94607.

that are improper – including the priming of liens held by unnoticed (and unknown) creditors, limitations on the Debtors' ability to exercise its fiduciary duties, and the effective disallowance of Committee's professional fees claims in amounts in excess of the budgeted amounts.[2]

## BACKGROUND

3.     On March 13, 2017, the Debtors each filed for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and manage their business as debtors-in-possession.

4.     On March 22, 2017, the U.S. Trustee appointed a Committee of Unsecured Creditors.

5.     The Debtors seek final approval of a postpetition financing facility in an amount up to $20 million, junior to $15 million of prepetition secured debt, but senior to all other prepetition secured and unsecured debt.

6.     The Debtors disclosed prepetition indebtedness in the amount of $168.9 million, of which $111.5 million is secured debt.  *See Declaration of Andrew Birch in Support of Chapter 11 Petitions and Requests for First Day Relief* [D.I. 3].

7.     The Debtors have sought to sell substantially all of their assets to a Stalking Horse Purchaser, for a purchase price of between $42-52 million, subject to higher and better offers. *See Corrected Order (I) Establishing Bid Procedures and Granting Related Relief and (II) Approving the Bid Protections Related to the Sale of Certain Assets Free and Clear of Liens, Claims and Encumbrances, and Interests* [D.I. 142], at Schedule 1, p.6, n.3.

---

[2]     The U.S. Trustee has raised additional concerns with the Debtors, which have been resolved in principle, subject to approving revised language.  Rather than burdening this Court with these objections, they are not included in this objection. The U.S. Trustee reserves the right to raise these objections at the hearing if the parties are unable to agree to appropriate language.

## ARGUMENT

### A. Administrative Insolvency

8.      Based upon representations by the Debtors, the Debtors' secured indebtedness exceeds the Stalking Horse's proposed purchase price by more than double.   As such, these cases are being run solely for the benefit of the Stalking Horse Purchaser, the DIP Lender and the first priority secured creditor.  However, to obtain the benefits of a chapter 11 case, including a Section 363 sale, the Debtors must be administratively solvent.  Administrative claimants may not be forced to fund a chapter 11 case for the benefit of secured lenders, with the substantial risk of administrative insolvency and conversion to chapter 7 after the secured lenders have reaped the benefits of a Section 363 sale.

9.      Chapter 11 of the Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations.  *See In re Eurospark Indus.,* 424 B.R 621, 627 (Bankr. E.D.N.Y. 2010).  As such, a debtor-in-possession owes fiduciary duties to the bankruptcy estate and must, among other things, "protect and . . . conserve property in [its] possession for the benefit of creditors" and "refrain[] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business*." In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (internal quotations and citation omitted).

10.      The Debtors must establish a record that their administrative creditors will be paid in full prior to approval of the Motion.  Where  a debtor comes into chapter 11 administratively insolvent, to retain management and control of the debtor's business operations, the debtor must ensure for an adequate budget – including a wind-down budget –to protect administrative creditors and prevent a situation where the secured lender and 363 purchaser reaps the benefit of the chapter 11 case, and the unpaid administrative creditors are faced with conversion to a

chapter 7 case or dismissal, after all of the debtor's assets are sold.

11.     Courts in this district and others have concluded that adequate provision must be made to assure that administrative expenses will be paid in full before debtor-in-possession financing can be approved.  For example, in *In re Townsends, Inc*., when the Debtors proposed DIP financing that would pay most administrative claims but leave the § 503(b)(9) claims behind, Judge Sontchi stated, 'if it appears that the case is administratively insolvent, I would be inclined to . . . either convert or dismiss the case . . . .' *In re Townsends, Inc., et al*., Case No. 10-14092 (Bankr. D. Del. January 21, 2011) Tr. at 23:25-24:22.  This Court also indicated that the present case may not continue without appropriate provisions for all administrative expense claims.  *See* March 29, 2017 Hearing Transcript at p. 90-91.

12.     Thus, the Motion cannot be approved without an adequate record that the Debtors have ensured that there will be sufficient funds to pay administrative creditors.

13.     For these same reasons, the requested waiver of sections 506(c) or 105(a) of the Bankruptcy Code, without an agreement to fund all administrative expenses of these cases, is improper.  If lenders wish to maximize the value of their collateral through the chapter 11 process, the cost of that process must be paid.

**B.  Priming Liens**

14.     The proposed DIP financing order improperly seeks to prime all prepetition liens.

15.     Section 364(d) provides that a priming lien can only be granted if "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

16.     The proposed order provides adequate protection for the known secured lenders whose liens are being primed: Hercules Capital, Inc., MMA Energy Capital, LLC, MHA Trust

LLC, and Wilmington Savings Fund Society, FSB.

17.     The proposed order does not provide any adequate protection for any other prepetition secured lenders, nor for any entity whose secured claim may be perfected subsequent to the Petition Date, but relate to a time prior to the Petition Date in accordance with Section 546(b)(1).

18.     Any such unknown secured creditor was not provided notice of the Debtors' intent to prime their liens.

19.     It is standard in this District to carve out from the priming lien all such prepetition secured claims, with language similar to the following:

> pursuant to Bankruptcy Code section 364(d)(l) the DIP Lender is granted a first-priority, valid and perfected, priming lien and security interest in on all encumbered property of the Debtor and its estate, which lien and security interest shall be senior to any existing liens, claims, interests or encumbrances**; provided that such priming lien shall be subject to** (A) a valid, non-avoidable lien that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, or (B) a valid, non-avoidable lien that was senior to the Prepetition Liens on the Petition Date.

Of course, the consenting creditors can be primed, but unnoticed, and unknown and potentially future secured creditors cannot be primed without notice and provision of adequate assurance.

### C. Replacement DIP Proceeds

20.     Paragraph 19(b) of the proposed order provides that, if the Debtors obtain alternative postpetition financing prior to the indefeasible payment in full of the DIP Obligations, then all of the cash proceeds derived from such credit or debt shall, after paying the DIP Obligations, be paid to the Prepetition Secured Party to satisfy the Senior Secured Obligations and Junior Secured Obligations.

21.     Section 364 permits a debtor to obtain postpetition financing, including ones that require priming liens on prepetition secured debt.  Nowhere in Section 364 is a debtor obligated

to pay all of its prepetition secured debt in full before it can obtain postpetition financing.

22.     This provision is overreaching and impermissible.  If, in the exercise of their fiduciary duties, the Debtors obtain alternative DIP financing, it must comply with the Bankruptcy Code but need not pay off the prepetition debt in full before utilizing the proceeds of the alternative DIP facility.

**D.  Indemnification and Releases**

23.      At paragraphs 29 and 30 of the Interim DIP Order, the Debtors grant broad indemnification and releases to the DIP Agent, the DIP Lender, and the Prepetition Secured Parties, along with a long list of persons related to them.  These provisions are inappropriate for a DIP Order, and rather should be included in a plan of reorganization.

24.     To the extent that such provisions are appropriate, they need to be limited to expressly carve out the fraud, gross negligence and willful misconduct of the indemnified or released parties.  Further, again only to the extent otherwise appropriate, the releases need to be limited to those causes of action relating to the Debtors' stipulations (validity, priority  and amount of the prepetition claims) and not "any aspect of their prepetition relationship with the Debtor."

**E.  Automatic Disallowance of Committee Professional Claims**

25.     Paragraph 35(b) of the Interim DIP Order provides for a  $50,000 "Committee Investigation Budget."  The order goes on to provide:

> Subject to the entry of the Final Order, any and all claims incurred by the
> committee related to or in connection with any Proscribed Activities other than up
> to the Committee Investigation Budget shall not, in the absence of sufficient
> unencumbered assets, be considered for purposes of determining compliance with
> section 1129(a)(9)(A) of the Bankruptcy Code and shall not be satisfied by the
> Carve-Out, any Cash Collateral, or proceeds of the DIP Facilities, and shall be
> satisfied solely from the unencumbered assets of the Debtors (if any) (the
> "Unencumbered Assets"), thereby reducing recovers to the holders of unsecured

claims (other than any deficiency claim held by any of the Prepetition Secured Parties); *provided however* that to the extent there are no Unencumbered Assets available to satisfy such claims, then such claims shall be automatically disallowed without further action by any party or Court order and shall not receive a recovery in these chapter 11 cases and any Successor Cases; . . . .

26.     While it is appropriate to provide that the Prepetition Secured Parties' collateral cannot be used to investigate its claims or causes of action against them, the remaining provisions of this paragraph are impermissible.

27.     First, the Committee Investigation Budget does not appear adequate.  This is a cost of administration that must be accounted for in the budget, and it must be in a sufficient amount to permit the Committee to exercise their fiduciary obligations to the estate.  *See In re Cuisinarts, Inc.*, 115 B.R. 774, 751 (Bankr. D. Conn. 1990).

28.     Second, it is inappropriate for a final DIP Order to alter the priority provisions of Section 1129.  Section 1129 requires that all administrative expense claims be paid in full in cash on the Effective Date in order for a Plan to be confirmed.  There is no basis for re-writing the Bankruptcy Code.

29.     Third, the automatic disallowance of professional fees claims is likewise inappropriate.   Reasonable fees and expenses of professionals are allowable as administrative expense claims.

30.     Fourth, it is unclear what the following means: "thereby reducing recoveries to the holders of unsecured claims (other than any deficiency claim held by any of the Prepetition Secured Parties)."  The Prepetition Secured Parties' deficiency claims have the same priority as other unsecured claims.  The order approving DIP financing cannot elevate the priority accorded to these claims.

7

### F.  Successor Liability

31.     Paragraph 42 of the Interim DIP Order provides:

>       Subject to the entry of the Final Order, in determining to make extensions under the DIP Facilities, in permitting the use of Cash Collateral, **or in exercising any rights or remedies as and when permitted pursuant to this Interim Order (or any Final Order), the DIP Credit Documents, or the Prepetition Financing Documents, as applicable**, none of the DIP Agent, the DIP Lender, the Prepetition Secured Parties, or any successor of any of the foregoing shall be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such term, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 et seq. as amended, or any similar federal or state statute).

Emphasis added.

32.     The bolded provisions of this paragraph seek to have this Court bless future activity, and determine the legal effect of such future activity.  This is in the nature of granting immunity to the DIP Agent, the DIP Lender and the Prepetition Secured Parties for future actions.

### G.  Additional provisions

33.     Paragraph 45 of the Interim DIP Order provides a discharge waiver to both the DIP Lender and the Senior Creditor, unless the DIP Obligations have been paid in full in cash. There is no basis to provide the Senior Creditor a discharge waiver.  Moreover, if the DIP Lender is not paid in full, it is likely because the DIP Lender terminated the DIP Facility or the Stalking Horse Agreement, and as such, there should be no predetermination of the DIP Lenders' claims.

34.     Paragraph 50 of the Interim DIP Order requires the Debtors to irrevocably waive its right to seek any modification or extensions of the DIP Order.  This is an improper limitation on the exercise of the Debtors' fiduciary duties.

8

WHEREFORE, the United States Trustee requests that this Court deny the Motion.

**Andrew R. Vara,**
**Acting United States Trustee, Region Three**

Dated: April 3, 2017                    **BY:** _____ /s/
                                        Linda J. Casey, Esquire
                                        Trial Attorney
                                        J. Caleb Boggs Federal Building
                                        844 King Street, Suite 2207, Lockbox 35
                                        Wilmington, DE 19801
                                        (302) 573-6491
                                        (302) 573-6497 (Fax)