# <u>EXHIBIT 1</u>

**First Amendment to the DIP Loan Agreement**

**FIRST AMENDMENT TO
DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT**

This **FIRST AMENDMENT TO DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT** (this "*Amendment*") is made as of April 4, 2017 (the "*Effective Date*"), by and among Sungevity, Inc., a Delaware corporation and a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code ("*Parent*"), Sungevity Development, LLC, a Delaware limited liability company and a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code ("*Sungevity Development*" and together with Parent, "*Borrower*") and certain of Parent's Domestic Subsidiaries party hereto as Guarantors and Debtors and Debtors-in-Possession under Chapter 11 of the Bankruptcy Code (each a "*Subsidiary Guarantor*" and, together with Parent and Sungevity Development, each a "*Credit Party*" and collectively, the "*Credit Parties*"), the several banks and other financial institutions or entities from time to time parties to the DIP Agreement (as defined below) (each, a "*Lender*" and collectively, the "*Lenders*") and WILMINGTON TRUST, NATIONAL ASSOCIATION, a national banking association, in its capacity as administrative agent for itself and the Lenders (in such capacity, the "*Agent*") that amends the DIP Agreement (as defined below). Capitalized terms used in this Amendment (including the Recitals), to the extent not otherwise defined herein, shall have the same meaning as in the DIP Agreement (as defined below).

<u>RECITALS</u>

WHEREAS, the Credit Parties are party to that certain Debtor-in-Possession Loan and Security Agreement, dated as of March 15, 2017 (as the same may be amended, restated, supplemented or otherwise modified from time to time prior to the date hereof, the "*DIP Agreement*") among the Credit Parties, the Agent and the Lenders, pursuant to which the Lenders have made certain loans and financial accommodations available to the Borrower;

WHEREAS, the Borrower has requested an amendment to the Milestone date set forth in Section 7.23(f) of the DIP Agreement to extend the deadline by which the Credit Parties must hold an auction with respect to the Bankruptcy Sale.

NOW THEREFORE, in consideration of the premises set forth above, the terms and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

SECTION 1.    <u>Section 7.23(f)</u> of the DIP Agreement is hereby amended and restated in its entirety as follows:

"(f) if qualifying bids are received in accordance with the Bidding Procedures Order, the Credit Parties shall hold an auction with respect to the Bankruptcy Sale on or before April 12, 2017; and"

SECTION 2.    <u>Conditions Precedent to Effectiveness of this Amendment</u>.  The effectiveness of this Amendment is subject to the satisfaction or waiver of the following conditions precedent:

(a)      Agent shall have received this Amendment fully executed, in form and substance reasonably acceptable to Agent and the Required Lenders; and

(b)      the representations and warranties set forth herein shall be true and correct and no Default or Event of Default shall exist and be continuing (other than the Default and/or Events of Default (i) described in the Notice of Default and Reservation of Rights delivered by the Agent to the Borrower on March 21, 2017 (the "Default Notice") and (ii) resulting from the payment of fees and expenses to (x) the Borrower's Chief Administrative Officer, in an amount approximating $25,000 and (y) Paul Weber).

SECTION 3.   Representations and Warranties.  Each Credit Party represents and warrants to Agent and the Lenders as follows:

(c)      Authority.  Subject to the entry of the Orders and the terms of the DIP Agreement, each Credit Party's execution, delivery and performance of this Amendment (i) has been duly authorized by all necessary corporate action of such Credit Party, (ii) will not result in the creation or imposition of any Lien upon the Collateral, other than Permitted Liens and the Liens created by the DIP Agreement and the other Loan Documents, (iii) do not violate any provisions of such Credit Party's Certificate or Articles of Incorporation (as applicable), bylaws, or any, law, regulation, order, injunction, judgment, decree or writ to which such Credit Party is subject and (iv) except as described on Schedule 5.3 to the DIP Agreement, do not violate any contract or agreement or require the consent or approval of any other Person which has not already been obtained.

(d)      Enforceability.  Subject to the entry of the Orders and subject to the terms of the DIP Agreement, this Amendment has been duly executed and delivered by each Credit Party that is a party thereto and is the legally valid and binding obligation of such Credit Party, enforceable against such Credit Party in accordance with its respective terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

(e)      Representations and Warranties.   Each of the representations and warranties made by any Credit Party in or pursuant to the Loan Documents are true and correct in all material respects on and as of the date hereof as if made on and as of such date, except to the extent such representations and warranties (A) expressly relate to an earlier date, in which case such representations and warranties are true and correct in all material respects as of such earlier date or (B) are qualified by materiality or "Material Adverse Effect" in the text thereof, in which case they are true and correct in all respects.

(f)      No Default; No Offset.  Other than the Defaults and/or Events of Default described in the Default Notice, no event has occurred and is continuing that constitutes a Default or Event of Default other than the Defaults and/or Events of Default described in the Default Notice, and after giving effect to this Amendment, as of the date hereof, there exists no Default or Event of Default and no right of offset, defense, counterclaim or objection in favor of any Credit Party as against the Agent or any Lender with respect to the Secured Obligations.

SECTION 4.  <u>Governing Law</u>.  This Amendment has been negotiated and delivered to the Agent in the State of New York, and shall have been accepted by Lender in the State of New York. Payment to the Agent by Credit Parties of the Secured Obligations is due in the State of New York. This Amendment shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, excluding conflict of laws principles that would cause the application of laws of any other jurisdiction.

SECTION 5.  <u>Counterparts</u>. Section 12.15 (***Counterparts***) of the DIP Agreement is hereby incorporated by reference, *mutatis mutandis*.

SECTION 6.  <u>Venue</u>. Section 12.9 (***Consent to Jurisdiction and Venue***) of the DIP Agreement is hereby incorporated by reference, *mutatis mutandis*.

SECTION 7.  <u>Jury Trial Waiver</u>. Section 12.10 (***Mutual Waiver of Jury Trial / Judicial Reference***) of the DIP Agreement is hereby incorporated by reference, *mutatis mutandis*.

SECTION 8.  <u>Reference to and Effect on the Loan Documents</u>.

(g)    Upon and after the effectiveness of this Amendment, each reference in the DIP Agreement to "this Agreement", "hereunder", "hereof" or words of like import referring to the DIP Agreement, and each reference in the other Loan Documents to "the DIP Agreement", "thereof" or words of like import referring to the DIP Agreement, shall mean and be a reference to the DIP Agreement as modified hereby.

(h)    Except as specifically set forth in this Amendment, the DIP Agreement and all other Loan Documents, are and shall continue to be in full force and effect and are hereby in all respects ratified and confirmed and shall constitute the legal, valid, binding and enforceable obligations of each Credit Party to the Agent and Lenders without defense, offset, claim or contribution.

(i)    The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of the Agent or any Lender under any of the Loan Documents, nor constitute a waiver of any provision of any of the Loan Documents.

SECTION 9.  <u>Ratification</u>.  Each Credit Party hereby restates, ratifies and reaffirms each and every term and condition set forth in the DIP Agreement, as amended hereby, and the Loan Documents effective as of the date hereof.

SECTION 10.  <u>Integration</u>.  This Amendment, together with the other Loan Documents, incorporates all negotiations of the parties hereto with respect to the subject matter hereof and is the final expression and agreement of the parties hereto with respect to the subject matter hereof.

SECTION 11.  <u>Severability</u>.  In case any provision in this Amendment shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Amendment and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 12.  Release; Covenant Not to Sue.

(j)    Each of the Credit Parties hereby absolutely and unconditionally releases and forever discharges the Agent and the Lenders, and any and all participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns thereof, together with all of the present and former directors, officers, agents and employees of any of the foregoing (each a "***Released Party***"), from any and all known claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which such Credit Party has had, now has or has made claim to have against any such person for or by reason of any act, omission, matter, cause or thing whatsoever arising from the beginning of time to and including the date of this Amendment, whether such claims, demands and causes of action are matured or unmatured; provided that, in each case, the foregoing release shall not apply to claims of gross negligence or willful misconduct. Each of the Credit Parties understands, acknowledges and agrees that this release may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(k)    Each of the Credit Parties, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Released Party above that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Released Party on the basis of any claim released, remised and discharged by any Credit Party pursuant to the above release. If any Credit Party or any of its successors, assigns or other legal representations violates the foregoing covenant, each Credit Party, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Released Party may sustain as a result of such violation, all attorneys' fees and costs incurred by such Released Party as a result of such violation.

SECTION 13.  Submission of Amendment.  The submission of this Amendment to the parties or their agents or attorneys for review or signature does not constitute a commitment by the Agent or any Lender to waive any of their respective rights and remedies under the Loan Documents, and this Amendment shall have no binding force or effect until all of the conditions to the effectiveness of this Amendment have been satisfied as set forth herein.

*[Signature Pages Follow.]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their respective authorized officers as of the day and year first above written.

**BORROWER:**

**SUNGEVITY, INC.**

By:
Name: Williams Nettles
Title: Chief Administrative Officer

**SUNGEVITY DEVELOPMENT, LLC**

By:
Name: William Nettles
Title: Chief Administrative Officer

**SUBSIDIARY GUARANTORS:**

**SUNGEVITY SD, LLC**

By:
Name: William Nettles
Title: Chief Administrative Officer

**SUNGEVITY INTERNATIONAL HOLDINGS LLC**

By:
Name: William Nettles
Title: Chief Administrative Officer

**LENDERS:**

**LSHC SOLAR HOLDINGS LLC**

By:
Name:  Scott Honour
Title:   President