**<u>EXHIBIT A</u>**

**Proposed Sale Order**

01:21778304.1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| SUNGEVITY, INC., et al.,[1] | Case No. 17-10561 (KG) |
| Debtors. | Jointly Administered |
|  | **RE: Docket Nos. 15, 139, 142** |

**ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND
(C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors") for the entry of an order (this "Order") pursuant to sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and local rule 6004-(1) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) authorizing the sale of substantially all of the Debtors' assets to the highest and best bidder at auction; (b) approving the Stalking Horse Purchase Agreement attached as **Exhibit D** to the Motion; (c) authorizing the assumption and assignment certain executory contracts and unexpired leases to the purchaser; and (d) granting related relief; and this Court having entered an order dated March 29, 2017 [Docket No. 142] (the "Bidding Procedures Order"): (i) approving the proposed bidding

---

[1]    The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598).  The principal place of business for each of the Debtors is 66 Franklin Street, Suite 310, Oakland, CA 94607.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and Stalking Horse Purchase Agreement, as applicable.

procedures attached thereto as **Schedule 1** (the "Bidding Procedures"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreement described herein and attached hereto; (iv) approving the Debtors' selection of LSHC Solar Holdings, LLC as the stalking horse bidder (the "Stalking Horse Bidder" or the "Purchaser", as applicable), the Bid Protections for the Stalking Horse Bidder, and that certain asset purchase agreement (as subsequently amended or modified, the "Stalking Horse Purchase Agreement"); and (v) scheduling a final hearing (the "Sale Hearing") to approve the Sale; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Acquired Assets (as defined in the Stalking Horse Purchase Agreement) to be sold, transferred or conveyed pursuant to the Stalking Horse Purchase Agreement and 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations herein are (a) Bankruptcy Code105, 363, 365, 503, and 507 and (b) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.      On March 13, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their business and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

F.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, and the Sale Hearing have been provided in accordance with Bankruptcy Code sections 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, Local Rule 6004-(1), the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order.  The Debtors also gave due and proper notice of the proposed assumption, sale, and assignment of certain contracts (the "Designated Contracts") that may be assumed and assigned

pursuant to the Stalking Horse Purchase Agreement through the Assumption and Assignment Procedures in accordance with the Bidding Procedures Order to each non-debtor party under each such Designated Contract (the "<u>Initial Assumption and Assignment Notice</u>").  Such notice was good and sufficient and appropriate under the particular circumstances.  In accordance with the Assumption and Assignment Procedures, the Debtors and Purchaser may, at any time after the Assumption and Assignment Service Date, before or after the Closing:  (a) supplement the list of Designated Contracts (the "<u>Designated Contracts List</u>") with previously omitted Designated Contracts; (b) remove a Designated Contract from the Designated Contracts List; and/or (c) modify the previously-stated cure costs associated with any Designated Contract.  The Debtors may assume and assign to the Purchaser any Designated Contract on the Designated Contracts List, as may be modified from time to time, (each, an "<u>Assumed Contract</u>"), subject to, and to the extent provided under, the Assumption and Assignment Procedures by providing notice to any affected non-debtor party to such Designated Contracts (the "<u>Supplemental Assumption and Assignment Notice</u>").  No other or further notice of the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

G.      A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation:  (a) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"); (b) the official committee of unsecured creditors (the "<u>Committee</u>"); (c) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis, excluding insiders); (d) Hercules Capital, Inc. ("<u>Hercules</u>"); (e) MMA Energy Capital, LLC; (f) MHA Trust LLC; (g) Atalaya Special Opportunities Fund VI LP; (h) Wilmington Savings Fund Society, FSB; (i) Wilmington

Trust, National Association; (j) the Securities & Exchange Commission; (k) the Office of the United States Attorney General for the District of Delaware; (l) the Internal Revenue Service; (m) the U.S. Department of Justice; (n) the offices of the attorneys general for the states in which the Debtors operate; (o) LSHC Solar Holdings, LLC; (p) such other entities as may be required by applicable Bankruptcy Rules or applicable Local Rules or as may be reasonably requested by the Stalking Horse Bidder; and (q) all other parties with any interest in the Acquired Assets. Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets.

H.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1.

I.     The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Stalking Horse Purchase Agreement, sell the Acquired Assets, and assume and assign the Assumed Contracts under Bankruptcy Code sections 363 and 365, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that (a) the Stalking Horse Purchase Agreement and the Closing (as defined in the Stalking Horse Purchase Agreement) will present the best, and only, opportunity to realize the value of the Debtors on a going concern basis; (b) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly due to a severe liquidity crisis; and (c) the Stalking Horse Purchase Agreement constitutes the highest and best offer for the Acquired Assets.

J.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of good faith, arm's length negotiations between the Debtors and the Purchaser.

K.      The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order, including consultation with the Committee.    As demonstrated by (a) any testimony and other evidence proffered or adduced at the Sale Hearing and hearing to approve the Bidding Procedures (the "Bidding Procedures Hearing"), and (b) the representations of counsel made on the record at the Sale Hearing and Bidding Procedures Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors: (x) afforded interested Potential Bidders a full, fair and reasonable opportunity to qualify as bidders and submit their highest and best offer to purchase substantially all of the Debtors' assets; and (y) provided Potential Bidders, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets.

L.      The Purchaser submitted the highest and best offer and is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order.   The Bidding Procedures obtained the highest value for the Acquired Assets for the Debtors and their estates.

M.      The offer of the Purchaser, upon the terms and conditions set forth in the Stalking Horse Purchase Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Stalking Horse Purchase Agreement is (a) the highest and best offer received by the Debtors; (b) fair and reasonable; (c) in the best interests of the Debtors' creditors and estates; and (d) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets.

N.     The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  The Purchaser is a newly formed entity established to acquire the Acquired Assets and initially capitalized with, among other things, cash contributed by Northern Pacific Group, its affiliates or managed funds and co-investors, and secured claims contributed by Hercules and included as a component of the credit bid purchase price.

O.     The credit bid by the Purchaser was made in accordance with the Bidding Procedures Order and Bankruptcy Code section 363(k).

P.     The Stalking Horse Purchase Agreement was negotiated and entered into in good faith, after arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m) or cause the application of or implicate Bankruptcy Code section 363(n) to the Stalking Horse Purchase Agreement or to the consummation of the sale transaction and transfer of the Acquired Assets to the Purchaser.  The Purchaser is entitled to all the protections and immunities of Bankruptcy Code section 363(m).

Q.     The Debtors are authorized to execute the Stalking Horse Purchase Agreement and all other documents contemplated thereby, and to consummate the transactions contemplated by the Stalking Horse Purchase Agreement.  No consents or approvals, other than as may be expressly provided for in the Stalking Horse Purchase Agreement, are required by the Debtors to consummate such transactions.

R.     The Debtors have sound business reasons for seeking to enter into the Stalking Horse Purchase Agreement and to sell and/or assume and sell and assign the Acquired Assets (including, for the avoidance of doubt, the Assumed Contracts) as more fully set forth in the Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors'

business judgment to sell the Acquired Assets and to consummate the transactions contemplated by the Stalking Horse Purchase Agreement.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Acquired Assets to the Purchaser and the assumption and assignment of the Assumed Contracts is a legal, valid and effective transfer of the Acquired Assets (including, for the avoidance of doubt, the Assumed Contracts).

S.      The terms and conditions of the Stalking Horse Purchase Agreement, including the consideration to be realized by the Debtors pursuant to the Stalking Horse Purchase Agreement, are fair and reasonable, and the transactions contemplated by the Stalking Horse Purchase Agreement are in the best interests of the Debtors' estates.

T.      Except as otherwise provided in the Stalking Horse Purchase Agreement, the Acquired Assets shall be sold free and clear of any lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject property, including any right of recovery, tax (including foreign, federal, state and local tax), order of any governmental authority or other claim there against or therein, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing; (b) any assignment or deposit arrangement in the nature of a security device; (c) any claims based on any theory that Purchaser is the successor, transferee or continuation of the Debtors or the Acquired Assets; and (d) any leasehold interest, license or other right, in favor of a person other than Purchaser, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (collectively, "Liens") and claims,

other than the Assumed Obligations, and will attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing; provided, however, that no Liens shall attach to the Cash Contribution (as defined below).

U.       The transfer of the Acquired Assets to Purchaser is a legal, valid, and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Stalking Horse Purchase Agreement, shall vest the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens.  Except as specifically provided in the Stalking Horse Purchase Agreement or this Order, the Purchaser shall not assume or become liable for any Liens relating to the Acquired Assets being sold by the Debtors.

V.       The Debtors may sell the Acquired Assets free and clear of all Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f) has been satisfied.  Those holders of Liens from which the Acquired Assets are to be sold free and clear (including, if applicable, the non-debtor parties to the Assumed Contracts) who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  All objections to the Motion have been resolved or overruled.  Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Acquired Assets ultimately attributable to the property against or in which they claim or may claim any Liens; provided, however, that no Liens shall attach to the Cash Contribution.

W.     Not selling the Acquired Assets free and clear of all Liens would adversely impact the Debtors' estates, and the sale of Acquired Assets other than one free and clear of all Liens would be of substantially less value to the Debtors' estates.

X.     The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code section 365, including Bankruptcy Code sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts.  The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Bankruptcy Code section 365(b)(1)(C).  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Stalking Horse Purchase Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

Y.     The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary, or providing for the termination thereof upon assignment or the insolvency or commencement of the chapter 11 cases.  The Purchaser, on behalf of the Debtors, has provided for the cures and/or other payments or actions required for the Debtors to assume and assign the Assumed Contracts to the Purchaser.  The Purchaser has provided adequate assurance of its future performance under the Assumed Contracts.

Z.     The Purchaser is acting in good faith, pursuant to Bankruptcy Code section 363(m), in closing the transactions contemplated by the Stalking Horse Purchase Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

01:21790885.1

10

AA.     The transactions contemplated under the Stalking Horse Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

BB.     The sale of the Acquired Assets outside of a plan of reorganization pursuant to the Stalking Horse Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The sale does not constitute a *sub rosa* chapter 11 plan.

CC.     The total consideration provided by the Purchaser for the Acquired Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes: (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act; (b) fair consideration under the Uniform Fraudulent Conveyance Act; and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws for the Acquired Assets.

DD.     Time is of the essence in consummating the sale.  In order to maximize the value of the Acquired Assets, preserve the viability of the business as a going concern, and ensure sufficient funds remain to wind-down the estates, it is essential that the sale of the Acquired Assets occur within the time constraints set forth in the Stalking Horse Purchase Agreement. Accordingly, there is cause to determine inapplicable the stays contemplated by Bankruptcy Rules 6004 and 6006.

01:21790885.1

EE.     Other than the Assumed Obligations, and except as expressly provided for by the terms of the Stalking Horse Purchase Agreement, the Purchaser shall (a) have no obligations with respect to any Excluded Liabilities; (b) shall acquire the Acquired Assets free and clear of the Excluded Liabilities to the extent they constitute a Lien; and (c) is released by the Debtors with respect to such Excluded Liabilities.

FF.     The Debtors, in connection with offering products or services, did not disclose any policy prohibiting the transfer of personally identifiable information and, therefore, the sale of the Acquired Assets may be approved pursuant to Bankruptcy Code section 363(b)(1)(A) without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code section 363(b)(1).

Based on the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted.

2.     All objections, responses, and requests for continuance concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

*Approval of Sale*

3.     The sale of the Acquired Assets, the terms and conditions of the Stalking Horse Purchase Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are, authorized and approved in all respects.

01:21790885.1

12

4.      The sale of the Acquired Assets and the consideration provided by the Purchaser under the Stalking Horse Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

5.      The Purchaser is hereby granted and entitled to all of the protections provided to a good faith buyer under Bankruptcy Codes section 363(m), including with respect to the transfer of the Assumed Contracts as part of the sale of the Acquired Assets pursuant to Bankruptcy Code section 365 and this Order.

6.      Pursuant to Bankruptcy Code section 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Stalking Horse Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Stalking Horse Purchase Agreement, as the case may be.

7.      The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Stalking Horse Purchase Agreement, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse Purchase Agreement, this Order and the sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably necessary for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Acquired Assets or

Assumed Obligations, as may be necessary or appropriate to the performance of the Debtors'
obligations as contemplated by the Stalking Horse Purchase Agreement, without any further
corporate action or orders of this Court.

8.      The Debtors and each other person or entity having duties or responsibilities
under the Stalking Horse Purchase Agreement, any agreements related thereto or this Order, and
their respective directors, officers, employees, members, agents, representatives, and attorneys,
are authorized and empowered, subject to the terms and conditions contained in the Stalking
Horse Purchase Agreement, to:  (a) carry out all of the provisions of the Stalking Horse Purchase
Agreement and any agreements related thereto or this Order; (b) issue, execute, deliver, file, and
record, as appropriate, the documents evidencing and consummating the Stalking Horse
Purchase Agreement and any agreements related thereto or this Order; (c) take any and all
actions contemplated by the Stalking Horse Purchase Agreement and any agreements related
thereto or this Order; and (d) to issue, execute, deliver, file, and record, as appropriate, such other
contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases,
or other Stalking Horse Purchase Agreements or documents and to perform such other acts and
execute and deliver such other documents, as are consistent with, and necessary or appropriate to
implement, effectuate, and consummate, the Stalking Horse Purchase Agreement, any related
agreement, and this Order and the transactions contemplated thereby and hereby, all without
further application to, or order of, the Court.

9.      [The general counsel and chief administrative officer] of the Debtors each shall
be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such
certification or attestation shall be required to make any such action valid, binding, and
enforceable).  The Debtors are further authorized and empowered to cause to be filed with the

secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, the Stalking Horse Purchase Agreement, any amendments thereto necessary or appropriate to effectuate the transactions contemplated by the Stalking Horse Purchase Agreement, any related agreements, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtors' corporate names, with respect to the implementation and consummation of the Stalking Horse Purchase Agreement, any related agreements, this Order, and the transactions contemplated thereby and hereby.

10.    Effective as of the Closing, (a) the sale of the Acquired Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens of any kind, pursuant to Bankruptcy Code section 363(f), and (b) the assumption of any Assumed Contracts and Assumed Obligations by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Obligations to the Purchaser and divests the Debtors of all liability with respect to any Assumed Obligations.

11.     The sale of the Acquired Assets is not subject to avoidance pursuant to Bankruptcy Code section 363(n).

12.     Notwithstanding anything to the contrary herein, the Purchaser shall cause the amount of Excluded Cash (as defined in the Stalking Horse Purchase Agreement) to be two million two hundred fifty thousand dollars ($2,250,000.00), and the Excluded Cash shall be excluded from the Acquired Assets (as defined in the Stalking Horse Purchase Agreement) and remain in the Debtors' estates.  The Excluded Cash shall be deemed to be consideration to the Debtors and their estates on account of any assets unencumbered by the liens or security interests securing the Debtors' postpetition senior credit facility to resolve the dispute over the Debtors' unencumbered assets as memorialized in [the Global Settlement Stipulation] (the "Settlement Stipulation").  For the avoidance of doubt, the Excluded Cash shall be free and clear of any Liens.

13.     Notwithstanding anything to the contrary herein, Hercules shall be deemed to have waived any and all rights to assert a deficiency claim or claims or any other claims with respect to the Cash Contribution.

*Transfer of Acquired Assets*

14.     Except to the extent specifically provided in the Stalking Horse Purchase Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized and empowered, pursuant to Bankruptcy Code sections 105, 363(b) and 363(f), to sell the Acquired Assets to the Purchaser.  The sale of the Acquired Assets vests the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, with all such Liens will attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors

may possess with respect thereto; provided, however, that no Liens shall attach to the Cash Contribution. The Motion or notice thereof shall be deemed to provide sufficient notice as to the sale of the Acquired Assets free and clear of Liens. Following the Closing Date, no holder of any Liens in the Acquired Assets shall have any basis to interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Liens, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Stalking Horse Purchase Agreement or this Order.

15.    The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, other than the Assumed Obligations, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deems necessary or appropriate to implement and effectuate the terms of the Stalking Horse Purchase Agreement and this Sale Order.

16.    To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.

01:21790885.1

17.     All of the Debtors' interests in the Acquired Assets to be acquired by the Purchaser under the Stalking Horse Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Purchaser under the Stalking Horse Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Acquired Assets to the Purchaser.

18.     Except as expressly provided in or pursuant to the Stalking Horse Purchase Agreement, the Purchaser is not assuming and is not deemed to assume, and the Purchaser shall not be, nor shall any affiliate of Purchaser be, in any way liable for or responsible for, as a successor or otherwise, for any liabilities, debts or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Stalking Horse Purchase Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Acquired Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Stalking Horse Purchase Agreement, which liabilities, debts and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

### Assumed Contracts

19.     Subject to the terms of the Assumption and Assignment Procedures, the Stalking Horse Purchase Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and the assignment of such Stalking Horse Purchase

01:21790885.1

Agreements to the Purchaser, as provided for or contemplated by the Stalking Horse Purchase Agreement, is hereby authorized and approved pursuant to Bankruptcy Code sections 363 and 365.

20.     The Assumed Contracts listed in the Initial Assumption and Assignment Notice (as may be amended in accordance with the Assumption and Assignment Procedures) shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to Bankruptcy Code sections 363 and 365, subject only to the making of all Cure Costs (as defined below) required to assume and assign the Assumed Contracts to the Purchaser, and with non-debtor parties to such Assumed Contracts being without basis to assert against Purchaser, among other things, defaults, breaches or claims of pecuniary losses existing as of the Closing or by reason of the Closing.

21.     Upon the Closing, in accordance with Bankruptcy Code sections 363 and 365, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract listed in the Initial Assumption and Assignment Notice (as may be amended in accordance with the Assumption and Assignment Procedures).  The Debtors are authorized to take all actions necessary to effectuate the foregoing.

22.     The Assumed Contracts listed in any Supplemental Assumption and Assignment Notice (as may be amended in accordance with the Assumption and Assignment Procedures) shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser as of the date specified in the Supplemental Assumption and Assignment Notice (the "Supplemental Assumption Date"), pursuant to Bankruptcy Code sections 363 and 365, subject only to the making of all Cure Costs (as defined below) required to assume and assign the Assumed Contracts to the Purchaser, and with non-debtor parties to such

Assumed Contracts being without basis to assert against Purchaser, among other things, defaults, breaches or claims of pecuniary losses existing as of the Supplemental Assumption Date or by reason of the Closing.

23.     Upon the Supplemental Assumption Date, in accordance with Bankruptcy Code sections 363 and 365, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract listed in the applicable Supplemental Assumption and Assignment Notice (as may be amended in accordance with the Assumption and Assignment Procedures).  The Debtors are authorized to take all actions necessary to effectuate the foregoing.

24.     Pursuant to Bankruptcy Code sections 365(b)(1)(A) and (B), and except as otherwise provided in this Order, the Purchaser, on behalf of the Debtors, shall promptly pay or cause to be paid to the parties to any Assumed Contracts the requisite cure amounts, if any, set forth in any cure notice pursuant to the Assumption and Assignment Procedures served by the Debtors on each of the parties to the Assumed Contracts (the "Cure Costs"), with respect to the assumption and assignment thereof.  The Cure Costs are hereby fixed at the amounts set forth in the cure notice served by the Debtors or the amounts subsequently agreed to by the Purchaser and the contract counterparty, or the amounts determined on the record of the Sale Hearing, such later hearing date that the Debtors determine in their discretion, or such other date determined by this Court as the case may be, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Debtors, the Purchaser or the Acquired Assets with respect to any claim for cure under any Assumed Contract.

25.     All defaults or other obligations under the Assumed Contracts arising prior to the Closing or the Supplemental Assumption Date, as applicable (without giving effect to any

acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)), shall be deemed cured by payment of the Cure Costs and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or Purchaser that any additional amounts are due or other defaults exist.

26.    Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Cost, if any.   No sections or provisions of any Assumed Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the Stalking Horse Purchase Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code section 365(e) and no assignment of any Assumed Contract pursuant to the terms of the Stalking Horse Purchase Agreement in any respect constitutes a default under any Assumed Contract.  In the absence of objection, the non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code section 365(c)(1)(B), and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

27.    The Purchaser has satisfied any and all requirements under Bankruptcy Code sections 365(b)(1) and 365(f)(2) to provide adequate assurance of future performance under the

Assumed Contracts.  The Purchaser shall not be required to provide any further evidence of any adequate assurance to any non-debtor counterparty of an Assumed Contract listed in the Initial Assumption and Assignment Notice.  The right of any non-debtor counterparty to an Assumed Contract listed in a Supplemental Assumption and Assignment Notice to request evidence of adequate assurance from the Purchaser shall be subject to the Assumption and Assignment Procedures.

28.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code section 365(k).

29.     The non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assumed Contracts.

30.     The Purchaser shall, within [fourteen (14) days after the Closing Date], provide the Committee with written notice of all Avoidance Actions that Purchaser intends to acquire under the Stalking Horse Purchase Agreement (the "Acquired Avoidance Actions"); provided that: (a) upon receipt of such notice, the Committee shall have five (5) business days to object to Purchaser's acquisition of any such Acquired Avoidance Actions; (b) the Purchaser and the Committee shall make good faith efforts to resolve any such objection consensually; (c) if the Committee and the Purchaser are unable to resolve any such objection consensually, the Purchaser and the Committee shall request a hearing as soon as reasonably practicable (subject to the Court's calendar and convenience) to resolve the dispute; provided, further, that the sole issue for the Court's consideration and determination shall be whether the Acquired Avoidance

Action subject to such objection arises from or is related to the Acquired Assets or the Assumed Obligations (each as defined in the Stalking Horse Purchase Agreement).

### *Additional Provisions*

31.     Except as to any rights pursuant to the Stalking Horse Purchase Agreement (and any agreements related thereto) and this Order, the Debtors hereby waive any and all actions and claims against, and hereby release, the Purchaser, and each of its shareholders, MEMBERS, controlling persons, directors, agents, officers, successors, assigns, directors, managers, and principals, each in their respective capacity as such, from any and all such claims or causes of action related to the sale or any other transactions contemplated by the Stalking Horse Purchase Agreement (and any agreements related thereto), and any actions, discussions, or negotiations related thereto, whether before, on, or after the Petition Date.

32.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreement and this Order.

33.     To the extent permitted by Bankruptcy Code section 525, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transaction contemplated by the Stalking Horse Purchase Agreement.

34.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Obligations and as otherwise set forth in the Stalking Horse Purchase Agreement, and the Purchaser has not purchased any of the Excluded Assets.

01:21790885.1

Consequently, all persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors other than Assumed Obligations pursuant to the Stalking Horse Purchase Agreement.  All persons holding or asserting any interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

35.    After the Closing Date, the Purchaser shall provide to the Debtors and/or any successor to the estate (including, for the avoidance of doubt, any plan trustee) (each of such parties, and including each such party's authorized representatives, agents, and employees, an "Access Party"), after reasonable notice and during normal business hours and without charge to the Access Party, access to all Books and Records related to all assets and liabilities for periods prior to the Closing and shall preserve such Books and Records until six (6) years after the Closing Date.  Such access shall include access to any information in electronic or digital form to the extent reasonably available and the right to photocopy or make electronic or digital copies. The Purchaser acknowledges that the Access Party shall have the right to retain copies of Books and Records for periods prior to the Closing.  Prior to destroying any Books and Records for periods prior to the Closing, the Purchaser shall notify the Access Party thirty (30) days in advance of any such proposed destruction of its intent to destroy such Books and Records, and the Purchaser shall permit the Access Party (or its designee) to retain such Books and Records (at the Access Party's or such designee's sole cost and expense).  With respect to any litigation or

01:21790885.1

claims relating to Excluded Assets and/or Excluded Liabilities, the Purchaser shall (at the Access Party's sole cost and expense) render all reasonable assistance that the Access Party may request in defending such litigation or claim and shall make available to the Access Party, its counsel and its other agents, advisors or representatives, Purchaser's personnel most knowledgeable about the matter in question.

36.    The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Stalking Horse Purchase Agreement, and the Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  Except to the extent the Purchaser assumes the Assumed Obligations pursuant to the Stalking Horse Purchase Agreement, neither the purchase of the Acquired Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Acquired Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' business within the meaning of (a) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations); (b) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine; and

(c) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing.

37.     Except to the extent expressly included in the Assumed Obligations or to enforce the Stalking Horse Purchase Agreement, pursuant to Bankruptcy Code sections 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliate, successor or assign thereof, or the Acquired Assets.

38.     Subject to the terms of the Stalking Horse Purchase Agreement, the Stalking Horse Purchase Agreement and any related agreements may be modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court, except to the extent such modification, amendment or supplement affects the terms of the Settlement Stipulation.

39.     The failure specifically to include any particular provisions of the Stalking Horse Purchase Agreement or any related agreements in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court, the Debtors, and the Purchaser that the Stalking Horse Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

40.     To the extent any provisions of this Order conflict with the terms and conditions of the Stalking Horse Purchase Agreement, this Order shall govern and control.

41.     This Order and Stalking Horse Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

42.     The provisions of this Order are non-severable and mutually dependent.

43.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Stalking Horse Purchase Agreement or the terms of this Order.

44.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Motion or notice thereof shall be deemed to provide sufficient notice of the Debtors' request

01:21790885.1

for waiver of the otherwise applicable stay of the order.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Stalking Horse Purchase Agreement at any time, subject to the terms of the Stalking Horse Purchase Agreement.  The Purchaser has acted in "good faith," and, if the Debtors and the Purchaser close under the Stalking Horse Purchase Agreement the Purchaser shall be entitled to the protections of Bankruptcy Code section 363(m) as to all aspects of the transactions under and pursuant to the Stalking Horse Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

45.    This Court shall retain exclusive jurisdiction to (a) enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Stalking Horse Purchase Agreement in all respects and (b) to decide any disputes concerning this Order and the Stalking Horse Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Stalking Horse Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

Dated: April ____, 2017
       Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

01:21790885.1