## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| SUNGEVITY, INC., *et al.*,[1] | ) Case No. 17-10561 (KG) |
|  | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) **Hearing Date: May 19, 2017 at 2:00 p.m. (Eastern)** |
|  | ) **Objection Deadline: May 12, 2017 at 4:00 p.m. (Eastern)** |

**DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 6006, (I) AUTHORIZING THE DEBTORS TO
REJECT CERTAIN CONTRACTS *NUNC PRO TUNC* TO APRIL 27, 2017 AND
(II) WAIVING THE REQUIREMENTS OF RULE 6006(f)(6) OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE**

> **ANY CONTRACT COUNTERPARTY RECEIVING THIS MOTION
> SHOULD LOCATE ITS NAME AND ITS RESPECTIVE
> CONTRACT(S) ON <u>EXHIBIT 1</u> TO THE PROPOSED ORDER**

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") hereby move the Court (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"), pursuant to sections 105 and 365 of title 11 the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (i) authorizing the Debtors to reject the executory contracts and/or unexpired leases set forth on **<u>Exhibit 1</u>** (the "<u>Executory Contracts Schedule</u>") to the Proposed Order *nunc pro tunc* to April 27, 2017 (as applicable, the "<u>Rejection Date</u>") and (ii) waiving the requirements of Bankruptcy Rule 6006(f)(6).  In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Sungevity, Inc. (4328), Sungevity SD, LLC (4847), Sungevity Development, LLC (0323), and Sungevity International Holdings LLC (5598).

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

**BACKGROUND**

3.      On March 13, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases (the "Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b).  On March 22, 2017, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").  No party has requested the appointment of a trustee or examiner in the Cases.

4.      Additional information regarding the circumstances leading to the commencement of these Cases and information regarding the Debtors' business and capital structure is set forth

in greater detail in the *Declaration of Andrew Birch in Support of Chapter 11 Petitions and Requests for First Day Relief* [D.I. 3], which is incorporated herein by reference.

5.      On April 17, 2017, the Court entered an order approving the sale (the "LSHC Sale") of substantially all of the Debtors' assets to LSHC Solar Holdings, LLC ("LSHC") [D.I. 280].  The LSHC Sale closed on April 25, 2017.

6.      As a result of the LSHC Sale, the Debtors are in the process of winding down their business operations.  As part of this process, the Debtors have reviewed and analyzed their contractual obligations that were not assumed and assigned in connection with the LSHC Sale, and have identified certain executory contracts and/or unexpired leases, including each of the customer contracts set forth on the Executory Contracts Schedules (each, a "Contract" and collectively, the "Contracts"), that no longer serve any business purpose and are burdensome to the Debtors' estates.  The Debtors are seeking to reject each of the Contracts as of the Rejection Date.

7.      To minimize administrative expenses and confusion for counterparties to the Contracts (each, a "Contract Counterparty"), the Debtors are also seeking a waiver of the requirements of Bankruptcy Rule 6006(f)(6), permitting them to reject more than 100 Contracts pursuant to this Motion.  To minimize confusion, the Debtors will provide an individualized notice of proposed rejection to each Contract Counterparty, substantially in the form attached hereto as **Exhibit B** (the "Rejection Notice"), which will include instructions for how to (a) obtain a copy of the full Motion free of cost, and (b) file an objection to the Motion.

## **RELIEF REQUESTED**

8.      By the Motion, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 365(a) of

the Bankruptcy Code and Bankruptcy Rule 6006, (i) authorizing the Debtors to reject the Contracts as of the Rejection Date, and (ii) waiving the requirements of Bankruptcy Rule 6006(f)(6) with respect to the Motion.[2]

## BASIS FOR RELIEF REQUESTED

### A.    Rejection of the Contracts Reflects the Debtors' Sound Business Judgment

9.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or an unexpired lease."  11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).

10.    Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve a debtor's decision to reject under section 365(a) of the Bankruptcy Code.  *See*, *e.g.*, *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (citing *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)); *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); *Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("In general, motions to reject executory contracts are evaluated under the business judgment test."); *In re Patterson*, 119 B.R. 59, 60 (E.D. Pa. 1990); *see also*, *In re Federated Dep't Stores, Inc.*, 131 B.R. 808, 811 (S.D. Ohio 1991) ("Courts traditionally have applied the business judgment

---

[2] The Debtors reserve their rights to argue that any claim for damages arising from the rejection of the Contracts is limited to the remedies available under any applicable termination provision of such rejected Contract.  Likewise, the Debtors reserve their rights to argue that one or more of the Contracts may have in fact expired by its own terms prior to the Petition Date.

standard in determining whether to authorize the rejection of executory contracts and unexpired leases."); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 120-21 (Bankr. D. Del. 2001) ("A debtor's determination to reject an executory contract is governed by the business judgment standard."); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate.").

11.    The "business judgment" test merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See Sharon Steel Corp.*, 872 F.2d at 39 (citing *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 846).  The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith. *See In re Fed. Mogul Global, Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bade faith or a gross abuse of discretion."); *In re Trans World Airlines, Inc.*, 261 B.R. at121 ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" citing *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849–50)).

12.    The Debtors have satisfied the "business judgment" standard for rejecting the Contracts.  The Contracts are financially burdensome and unnecessary to the wind down of the Debtors' business operations or to the administration of the Debtors' estates.  Moreover, the Debtors believe that the Contracts have no independent value outside of the Debtors' business, that any continued expense in maintaining and attempting to market the Contracts would far

outweigh any benefit resulting from trying to identify a potential acquirer of the Contracts, and that these continuing expenses would unnecessarily deplete the Debtors' assets to the detriment of other creditors.  Accordingly, the Debtors submit that the rejection of the Contracts should be approved because it is in the best interests of the Debtors' estates and represents a proper exercise of the Debtors' business judgment.

**B.    Retroactive Rejection Is Appropriate**

13.    The Debtors respectfully submit that it is appropriate for the Court to authorize the rejection of the Contracts effective as of the Rejection Date.  While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively, many courts have held that bankruptcy courts are empowered to grant rejection retroactive to a date prior to entry of the order authorizing rejection.  *See Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 n.4 (Bankr. D. Del. 2009) ("Under appropriate circumstances, this Court may enter a lease rejection order with an effective date earlier than the date the order is entered."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that bankruptcy court may approve a retroactive rejection after balancing the equities in a particular case); *BP Energy Co. v. Bethlehem Steel Corp.*, No. 02-civ-6419, 2002 U.S. Dist. LEXIS 22052, at *10 (S.D.N.Y. Nov. 15, 2002) (acknowledging that "courts considering the issue of whether a bankruptcy court is authorized to assign a retroactive rejection date under section 365(a) have held that it may do so 'when the principles of equity so dictate'").  Further, section 105 of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     Here, the balance of equities favors authorizing the Debtors to reject the Contracts effective as of the Rejection Date.  A postponement of the effective date of rejection of the Contracts may cause the Debtors to incur unnecessary administrative expenses for Contracts that provide no tangible benefits to the Debtors' estates.  Further, allowing the Debtors to reject the Contracts will not unduly prejudice the non-debtor counterparties to these agreements because the Debtors have done, or will do, all that is required for rejection of each Contract as of the Rejection Date.  Specifically, by service of the Motion, the Debtors will have informed the non-debtor counterparties to the Contracts of the Debtors' unequivocal intent to reject the Contracts as of the Rejection Date and the Debtors' commitment to not withdraw the Motion as to any Contract absent consent of the applicable counterparty.  Moreover, because the non-debtor counterparties will receive notice of the Motion, such counterparties will have sufficient opportunity to object if they so choose.

15.     The Debtors firmly believe that due to their financial condition and the need to reduce unnecessary costs and administrative claims against their estates, the equities weigh heavily in favor of retroactive rejection of the Contracts effective as of the Rejection Date. Accordingly, the Debtors submit that the relief requested herein is warranted in the Cases.

**C.     Waiver of the Requirements of Bankruptcy Rule 6006(f)(6) is Appropriate**

16.     Bankruptcy Rule 6006(f)(6) requires that an omnibus motion to reject multiple executory contracts "be limited to no more than 100 executory contracts or unexpired leases." Fed R. Bankr. P. 6006.  However, the 2007 Advisory Committee Note to Rule 6006 states that "[a]n omnibus motion to assume, assign, or reject multiple executory contracts and unexpired leases must comply with the procedural requirements set forth in subdivision (f) of the rule, unless the court orders otherwise." Fed. R. Bankr. P. 6006 advisory committee note.  Thus,

7

courts will waive the requirements of Bankruptcy Rule 6006(f)(6) for cause.  *See, e.g.*, *In re Old Carco LLC*, 406 B.R. 180, 207-10 (Bankr. S.D.N.Y. 2009) (citing the advisory committee notes and permitting more than 100 agreements to be rejected through one motion when (a) the rejected agreements were substantially similar, (b all of the rejected agreements were subject to a single comprehensive analysis by the debtors, and (c) all of the agreements were being rejected and not assigned to the reorganized entity).  As the court noted in *Old Carco*, counterparties to the rejected agreements could easily find their names on the list of counterparties, and "it would not have advanced the process by requiring the Debtors to file eight separate motions requesting the same relief."  *Id*. at 210.

17.     The Debtors respectfully submit that, as in *Old Carco*, cause exists here to waive the requirements of Rule 6006(f)(6) and that, for several reasons, the 100-contract limitation imposed by Bankruptcy Rule 6006(f)(6) should not apply to this Motion.  First, each of the executory contracts implicated by this Motion is of the same type and purpose—*i.e.*, they are all customer contracts that are not being assumed by LSHC.  Thus, although this is an "omnibus" motion addressing numerous agreements, the nature of these agreements and their treatment are substantially similar.

18.     Likewise, the Debtors' rationale for rejecting the Contracts, and the legal and factual support for these determinations, are uniform.  Indeed, as explained herein, the proposed rejections are the result of LSHC's election not to have the contracts assumed in connection with the LSHC Sale.

19.     Third, consistent with Bankruptcy Rule 6006(f)(2), the counterparties to the Contracts are listed on the Executory Contracts Schedules in alphabetical order, making the list easy to navigate without the need to file multiple concurrent motions.  Additionally, for further

ease of review by Contract Counterparties, the Debtors will serve each Contract Counterparty with the individualized Rejection Notice, which will (a) notify the Customer Counterparty that their Contract is being rejected by the Debtors, (b) provide instructions for how to obtain a copy of the full Motion, including all of the Executory Contracts Schedules, free of charge, and (c) provide notice of the deadline and procedures for filing an objection to the Motion. The Debtors submit that it would be wasteful, confusing, and inefficient if the Debtors were required to file separate pleadings requesting the same relief, or to serve a schedule listing thousands of Contracts on every single Contract Counterparty. Under these circumstances, the Debtors submit that including all of the Rejected Contracts in a single motion, and providing Contract Counterparties with notice of that motion in the form of the Rejection Notice, is the most efficient and otherwise appropriate course for the benefit not only of the Debtors, but also of the Court and the Contract Counterparties. *See* Fed. R. Bankr. P. 6006 advisory committee's note (stating the drafting committee's intent that a court may order exceptions to Fed. R. Bankr. P. 6006(f) for an omnibus motion); *see also In re Gridway Energy Holdings*, Case No. 14-10833 (CSS) (Bankr. D. Del. Mar. 27, 2015).

## **RESERVATION OF RIGHTS**

20.      Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses, or counterclaims with respect to any of the Contracts. Nor does anything contained herein constitute an acknowledgement that a particular Contract constitutes an executory contract under section 365 of the Bankruptcy Code.

## **NOTICE**

21.      Notice of the Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) the counterparties to the Contracts; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002.

9

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as the Court deems just and proper.

Dated: April 27, 2017
       Wilmington, Delaware

/s/ Jaime Luton Chapman
M. Blake Cleary (No. 3614)
Jaime Luton Chapman (No. 4936)
Kenneth A. Listwak (No. 6300)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

Jonathan I. Levine (admitted *pro hac vice*)
Jennifer L. Marines (admitted *pro hac vice*)
Melissa A. Hager (admitted *pro hac vice*)
Erica J. Richards (admitted *pro hac vice*)
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for Debtors and Debtors-in-Possession*